**Frank L. SPULAK, Plaintiff–Appellee,**

v.

**K MART CORPORATION,
Defendant–Appellant.**

**No. 86–2156.**

United States Court of Appeals,
Tenth Circuit.

Jan. 18, 1990.

Before SEYMOUR and EBEL, Circuit Judges, and RUSSELL,* District Judge.

SEYMOUR, Circuit Judge.

Frank Spulak sued K Mart Corporation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* (1982), alleging that he was constructively discharged from his employment with K Mart as a result of illegal age discrimination. He also asserted a pendent state claim for age discrimination and for extreme and outrageous conduct. The jury returned a verdict in favor of Spulak on the ADEA claim and awarded him back pay and liquidated damages. The court ruled post-trial that Spulak was entitled to front pay in lieu of reinstatement. The jury resolved the state claims adversely to Spulak. On appeal, K Mart contends that: 1) the evidence is insufficient to support the jury's findings that Spulak was constructively discharged and that age was a determining factor in K Mart's conduct; 2) the district court made a number of erroneous trial rulings; 3) the court erred in assessing the amount of damages; 4) the evidence does not support an award of liquidated damages; and 5) the court erred in calculating the amount of attorney's fees awarded to Spulak. We affirm.

## I.

## BACKGROUND

Spulak was in his late fifties when he left his position as an auto service department manager with K Mart on April 30, 1985. He had been with the company almost eleven years. K Mart underwent a corporate restructuring in February 1985, in part to improve the profitability of its auto parts and service · departments, most of which were losing money. As a result of this reorganization, Spulak came under the supervision of a new district manager, James Price. Spulak testified that in the two months before he left, he began to feel his

Charles W. Newcom of Sherman & Howard, Denver, Colo., for defendant-appellant.

Richard G. Sander of Zerobnick & Sander, P.C., Denver, Colo. (Martin Zerobnick and Gwen Jarahian Young of Zerobnick & Sander, P.C., Denver, Colo., and John O. Walker, Fort Collins, Colo., with him on the brief), for plaintiff-appellee.

* The Honorable David L. Russell, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

employment was threatened because of the conduct of Price and one of the mechanics who worked for Spulak, Gary Chisholm. Consequently, Spulak made a telephone inquiry to a K Mart retirement specialist and determined what his benefits would be if he took early retirement as of May 1, 1985. The next day Price asked the K Mart loss prevention manager to investigate Spulak.

Spulak was subsequently accused of violating company policy by using the store's back door, failing to sign in and out properly, using improper invoicing procedures for work done on his car, and paying for merchandise four days after taking it from the store. These accusations were first made to Spulak by Jean Harp, who was K Mart's Loss Prevention Manager. Spulak then turned to Price, who initially said he did not know what was going on, but moments later returned to Spulak and told him that he had authorized the investigation. Price then told Spulak, "I am going to call the Personnel Manager and tell him that I am going to fire you," rec., vol. III, at 258, and that he was "fired or going to be fired," rec., vol. IV, at 313. Spulak testified that at that point he was given an ultimatum either to be fired or to take early retirement. Rec., vol. III, at 258, 261. He knew that he would lose his benefits if he was fired so he had no alternative except to take early retirement. *Id.* at 258. Price advised Spulak to "just run over to the Personnel right quick and make out the application for [his] retirement," *id.* at 261, and Spulak did so. There was other testimony that Price merely told Spulak that he had "enough on him to fire him," *id.* at 187, and, in fact, Price ultimately decided to write up the violations as a written reprimand rather than as a termination. The reprimand warned Spulak that any further violations would result in termination. The written reprimand apparently occurred after Spulak had said he would take early retirement, however, and Spulak's theory of the case was that he submitted his resignation without knowing that the written reprimand only advised him that he would be fired in the future if he committed further infractions. Rec., vol. II, at 56.

Although Spulak apparently announced his resignation on or about March 27, it was not to become effective until May 1, 1985. Some time in April, Spulak approached Price and asked him what would happen if he changed his mind about taking early retirement. Price told him that if he tried to withdraw his retirement, Price would find some other way to fire him. Rec., vol. III, at 261. Price denied making that statement.

## II.

### SUFFICIENCY OF THE EVIDENCE

After the jury returned a verdict for Spulak on his ADEA claim, K Mart moved unsuccessfully for j.n.o.v., contending that Spulak had failed to create a fact issue as to whether he had been constructively discharged and whether age was a determining factor in K Mart's actions. In reviewing the denial of a motion for j.n.o.v., we must view the evidence most favorably to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from the evidence. *See Trujillo v. Goodman,* 825 F.2d 1453, 1456 (10th Cir.1987).

> "[W]e may find error only when the evidence points but one way and is susceptible to no reasonable inferences sustaining the position of the party against whom the motion is made. While a scintilla of evidence is not enough, we must affirm if evidence was before the jury upon which it could properly find against the movant."

*Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1547 (10th Cir.1988) (citations omitted).

The framework for assessing the evidence in an age discrimination case parallels that applicable in a Title VII case. *Id.* at 1547.

> "[A] plaintiff establishes a prima facie case by showing (1) he is within the protected age group, (2) he was doing satisfactory work, (3) he was discharged despite the adequacy of his work, and (4) his position was filled by a person younger than he. The burden of production

then shifts to the employer to show a legitimate, nondiscriminatory reason for the challenged action. The plaintiff retains the ultimate burden of persuasion, which he may carry directly by proving that age was more likely than not a determinative factor in the employment decision, or indirectly by establishing that the employer's proffered explanation is mere pretext."

*Id.* (citations omitted). Spulak presented evidence that he was fifty-eight at the time he left K Mart and that he was replaced by Gary Chisholm, who was in his late twenties or early thirties. The record shows that Spulak rated average or above in the two previous yearly performance reviews and had received average or above average annual merit raises. K Mart contends, however, that the evidence fails to support the jury's finding of constructive discharge.

■ In *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir.1986), we clarified the standard for determining whether a constructive discharge has occurred:

> "[P]roof of constructive discharge 'depends upon whether a reasonable [person] would view the working conditions as intolerable.' *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 172 (10th Cir.1982). This shift in emphasis is consistent with the District of Columbia Circuit's observation that '[t]o the extent that [the employer] denies a conscious design to force [the employee] to resign, we note that an employer's subjective intent is irrelevant; *[the employer] must be held to have intended those consequences it could reasonably have foreseen. See, e.g., Bourque [v. Powell Elec. Mfg. Co.],* 617 F.2d [61] at 65 [ ( 5th Cir. 1980) ].' *Clark v. Marsh*, 665 F.2d 1168, 1175 n. 8 (D.C. Cir.1981) (emphasis added)."

In other words, "the question on which constructive discharge cases turn is simply whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Id.* A finding of constructive discharge is supported by evidence that an employee has resigned, rather than waiting to be fired, because of unreasonably harsh conditions that have been applied to him in a discriminatory fashion. *See, e.g., Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 207–08 (5th Cir.1986); *Young v. Southwestern S & L Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975); *cf. Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985) ("An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers."), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986).

Spulak presented evidence tending to prove that if he had not taken early retirement he would have been fired, thereby losing his retirement benefits. The record contains evidence that using the back door and failing to sign in and out were widespread policy violations that did not ordinarily precipitate a loss prevention investigation or a written reprimand. Spulak also offered evidence that his delay in paying for the store merchandise, a set of spark plugs, was a practice previously approved by a store manager. Price testified that Spulak had been disciplined not for taking K Mart property but for failing to follow proper invoicing procedures. But Spulak presented evidence to show that the way in which he had invoiced his own auto repairs, which varied approximately ten dollars from the figure suggested by the loss prevention investigation, was proper. Contrary to the warning in Spulak's reprimand that any further violation would result in termination, Spulak's evidence showed that K Mart policy was generally to allow three written reprimands before terminating employment. This evidence is sufficient to support a jury finding that Spulak was singled out for unduly harsh and discriminatory treatment, and that he was given an ultimatum either to retire or be fired. Thus, the jury could reasonably conclude that he was constructively discharged.

■ K Mart also contends the evidence was insufficient to establish that age was a determining factor in the actions it took. "Age need not be the *sole* reason for the

employer's acts, but plaintiff must show that age 'made a difference' in the employer's decision." *Cooper*, 836 F.2d at 1547 (citations omitted). The evidence of Spulak's age, his employment record, the constructive discharge, and his replacement by a younger person was sufficient to establish a prima facie case of age discrimination. K Mart asserts that it overcame this showing as a matter of law because the policy violations underlying the actions taken against Spulak constituted legitimate non-discriminatory reasons for its action, reasons which Spulak failed to rebut. This assertion is directly contradicted by the record.

A plaintiff may counter proof of legitimate business reasons by showing that the rules were not uniformly enforced, "thereby raising the inference that [the employer] selectively enforced its rules against [the plaintiff] and that the rules were but a pretext to mask age discrimination." *Id.* As we have noted, Spulak offered evidence that the policy violations upon which K Mart relies were selectively enforced against him. The record also contains evidence that Price told another K Mart employee that "these old fogies are either going to have to comply or get out," rec., vol. II, at 84, and that another district manager told Spulak that he could come to work for him if he were twenty-seven, rec., vol. III, at 246. We have held that such remarks, even if made in jest, are probative of pretext. *See Cooper*, 836 F.2d at 1548 & n. 2. Finally, two other K Mart ex-employees who were members of the protected age group testified they were subjected to substantially similar treatment by K Mart, and were replaced by younger employees. This evidence is clearly sufficient to create a jury issue on whether K Mart's proffered reasons were a pretext for illegal age discrimination.

### III.

### TRIAL RULINGS

K Mart argues that the trial court committed reversible error by refusing to grant a new trial based on the prejudice resulting from Spulak's closing argument; by admitting the testimony of two former K Mart employees; and by denying K Mart's motion to bifurcate the testimony relevant to Spulak's state law claim for outrageous conduct. We are not persuaded.

### A. Closing Argument

The district court sent Spulak's state law claim for outrageous conduct to the jury but did not allow it to consider the issue of punitive damages. The jury was instructed that damages for the outrageous conduct claim included compensation for emotional distress, physical discomfort and illness, and lost earnings. *See* rec., vol. V, at 66–67. The court also sent Spulak's claim for liquidated damages to the jury under an instruction permitting the award of such damages upon a finding that "K–Mart Corporation knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [ADEA], ... that not only was [Spulak] discriminated against on account of his age, but that there is additional evidence of aggravated circumstances, such as an employer's complete disregard for the law." *Id.* at 61–62.[1]

K Mart argues that Spulak's attorney, in urging the jury to award damages for outrageous conduct and aggravated circumstances, improperly brought the issue of punitive damages before the jury in closing argument. We have carefully reviewed the attorney's remarks in context and we find K Mart's contention lacking in merit. K Mart's primary objection on appeal is to counsel's request that the jury send K Mart a message. However, this argument was specifically directed to Spulak's outrageous conduct claim and was addressed to the jury's role as the conscience of the community. *See, id.* at 25; *see also Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo.1988) (outrageous conduct established when "recitation of the facts to an

---

1. We address K Mart's argument that the evidence does not support an award of liquidated damages in Part IV–D infra.

average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous!' ") (quoting *Rugg v. McCarty*, 173 Colo. 170, 177, 476 P.2d 753, 756 (1970)). Counsel's argument that Spulak was entitled to damages for pain and suffering, and that the jury should "send K–Mart a message by awarding Frank the damages, the full damages, that he is entitled to," rec., vol. V, at 49, does not constitute reversible error in view of the claims for outrageous conduct and liquidated damages before the jury; nor, when read in context, did it ask the jury to do anything other than to award Spulak his full compensatory damages. K Mart's argument that it was prejudiced by these remarks is undercut by the jury's rejection of Spulak's state law claim for outrageous conduct.

## B. Testimony by K Mart Ex–Employees

 K Mart asserts that the district court committed reversible error in allowing two former K Mart employees in the protected age group to testify about the circumstances under which they left their employment. One of the witnesses, Taylor, held the same position as Spulak at another store in Colorado. The other witness, Cannon, was a mechanic who worked under Taylor.

Taylor testified that his district manager told him on May 5, 1985, that Spulak had taken early retirement at K Mart's request and asked him if he were going to do the same. A few days later he was fired for insubordination after being reprimanded for minor matters that never before had been a problem. He was replaced by a younger employee. Cannon was fired two weeks after Taylor, and a few months before his pension vested with K Mart. He was also replaced by a younger worker. He testified that the grounds for his termination were invalid. K Mart contends that

the relevance of this evidence was outweighed by its prejudice under Fed.R.Evid. 403.

" 'The decision to exclude (or admit) evidence under this rule is within the sound discretion of the trial court, and will not be reversed absent a *clear* abuse of discretion.' " *Agristor Leasing v. Meuli*, 865 F.2d 1150, 1152 (10th Cir.1988) (quoting *K–B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1155 (10th Cir.1985) and adding emphasis). As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent. *See, e.g., Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1423–24 (7th Cir. 1986) (Title VII); *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985) (ADEA); *Phillips v. Smalley Maintenance Services, Inc.*, 711 F.2d 1524, 1532 (11th Cir.1983) (Title VII); *Morris v. Washington Metropolitan Area Transit*, 702 F.2d 1037, 1045–46 (D.C.Cir.1983) (discharge in retaliation for exercising 1st Amendment rights); *Harpring v. Continental Oil Co.*, 628 F.2d 406, 409 (5th Cir.1980) (ADEA), *cert. denied*, 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981). In *Stumph*, for example, an ADEA case involving facts analogous to those at issue here, the district court granted summary judgment for the defendant even though the plaintiff had presented evidence by two other older employees who had retired earlier than they had planned as a result of their treatment by the defendant. The appeals court reversed the summary judgment for the defendant, holding that this evidence was probative of the defendant's discriminatory intent and created a fact question on the issue of pretext. *See* 770 F.2d at 97–98. The above cases support the district court's decision to admit the testimony here, and we find no abuse of discretion.[2]

---

2. The circumstances in the instant case are distinguishable from those at issue in *Schrand v. Federal Pacific Elec. Co.*, 851 F.2d 152 (6th Cir. 1988). There the appellate court held that the trial judge committed reversible error in admitting testimony by two ex-employees of the de-

fendant that they were told they were being fired because they were too old. The court based its conclusion on the lack of evidence "from which the alleged statements of the witnesses could logically or reasonably be tied to the decision to terminate [the plaintiff]." *Id.* at

## C. Bifurcation

■ K Mart argues that the district court erred in refusing to bifurcate trial of the age claim from the state law claim for emotional distress. K Mart contends that the evidence of emotional distress, which is not an element of ADEA damages, was so prejudicial that reversal is required. This argument merits little discussion.

The jury rejected Spulak's claim for emotional distress, undermining K Mart's claim of prejudice. Moreover, the district court specifically instructed the jury with respect to the ADEA claim that "damages may not be awarded for emotional upset, pain and suffering, or any similar such effects; further, you are instructed that the fact that Plaintiff Spulak may or may not have suffered such emotional effects has no bearing on whether K Mart Corporation violated the Federal Age Discrimination laws." Rec., vol. V, at 56–57. We must assume the jury followed this explicit instruction. *See Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1333 (10th Cir.1984).

## IV.

## DAMAGES

K Mart raises several arguments with respect to the damages awarded Spulak. It contends the record does not support the district court's decision to award front pay in lieu of reinstatement, that the court erred in failing to adjust the damages to reflect Spulak's alleged failure to mitigate or his receipt of disability benefits, and that the record does not support an award of liquidated damages.

## A. Front Pay

■ Front pay in lieu of reinstatement is an available element of ADEA damages in this circuit. *See generally EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1171–73 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). Even so, "reinstatement is the preferred remedy under the ADEA and should be ordered whenever it is appropriate. Reinstatement may not be appropriate, however, when the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible." *Id.* at 1172 (citations omitted). K Mart argues that the district court's decision to award Spulak front pay should be reversed because it is without support in the record.

The district court's decision that front pay was the appropriate remedy in this case was based on Spulak's assertion that he would have problems returning to his managerial position because he had been humiliated in front of his employees and because he feared retaliatory conduct based upon what he had observed in the past. *See* rec., vol. IV, at 453–54. The court's conclusion is supported by the record. In investigating Spulak's invoicing procedures, the loss prevention officer interviewed the bookkeeper and all the mechanics who worked under Spulak. The purpose of the investigation, which was made clear to those interviewed, was to ascertain whether Spulak had stolen merchandise and undercharged himself for service on his automobile. This evidence supports Spulak's contention that the investigation left his employees with the impression that he was guilty of wrongdoing, rendering him unable to function amicably and productively in his former supervisory capacity. Spulak's fear of retaliation is likewise supported by K Mart's past treat-

156. Here, to the contrary, Taylor and Cannon worked in the same state as Spulak and were fired within a very short time after Spulak left K Mart. Although they worked under a different district manager, that manager referred to Spulak's early retirement "at K Mart's request" when encouraging Taylor to consider retiring. Moreover, unlike the plaintiff in *Schrand*, who did not allege he himself was told he was being fired because he was too old, Spulak contends that the circumstances under which Taylor and Cannon were fired were so similar to his own as to be probative of K Mart's discriminatory treatment of its older workers.

We are also not persuaded by *Haskell v. Kaman Corp.*, 743 F.2d 113, 121–22 (2d Cir.1984), that we should find an abuse of discretion here. *Haskell* was a statistics case in which the sample was held to be too small, and in which most of the testimony did not raise an inference of age discrimination. *See id.* at 121.

ment of him wherein the District Manager told him that if he withdrew his resignation and remained with K Mart, the District Manager would find some other way to fire him. If anything, the antagonism between Spulak and K Mart has only increased as a result of this litigation, which the district court described as "bitterly contested from start to finish." Rec., vol. I, doc. 15, at 10. We thus find no grounds for disturbing the trial court's decision to award front pay in this case.

## B. Mitigation

■ K Mart contends that it is entitled to a reduction in damages because Spulak's evidence of mitigation is inadequate as a matter of law. The jury was properly instructed that "[o]ne claiming damages for losses such as back pay has the duty to take such reasonable steps under the circumstances as will minimize those damages." Rec., vol. V, at 66. A claimant need only make a reasonable and good faith effort, and is not held to the highest standards of diligence. *See EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir.1980) (citing *United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918 (10th Cir.1979)); *see also Whatley v. Skaggs Companies, Inc.*, 707 F.2d 1129, 1138 (10th Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983). The burden is on the employer to establish that the claimant did not exercise reasonable diligence. *Lee Way Motor Freight*, 625 F.2d at 937. Spulak described his efforts to find work by submitting applications and resumes. *See* rec., vol. III, at 265. He attributed the lack of response to the fact that the policy violations write-up was in his personnel file. Rec., vol. IV, at 326. This constitutes sufficient evidence of reasonable efforts at mitigation to send the issue to the jury.

## C. Disability Benefits

■ Six months after Spulak left K Mart, he began receiving social security disability benefits on the basis of emphysema and back problems, conditions not related to the termination of his employment. K Mart contends that this award of disability benefits establishes as a matter of law that Spulak was thereafter unable to work for K Mart or anyone else, and is therefore not entitled to front pay during the period he draws disability. In support of its argument K Mart cites *Endres v. Helms*, 617 F.Supp. 1260 (D.D.C.1985), in which the district court held that the plaintiff could not receive back pay during the periods he was hospitalized if he would not have been paid during that time. In *Endres*, the plaintiff's inability to work was apparently an undisputed fact. Here, K Mart contends that Spulak's inability to work is established as a matter of law on the basis of the administrative decision. We do not agree.

Spulak testified that his health did not prevent him from working at K Mart because he did no physical labor, but that he was unable to find comparable employment elsewhere because he could not pass a company physical exam. The Social Security Administration itself recognizes that a recipient of disability benefits may attempt to return to work, and provides a nine month test period during which a recipient may resume work and still draw benefits. *See* Brief for Appellant, ex. H.[3] Spulak thus raised a fact issue as to whether his disability, although sufficiently severe to entitle him to benefits, nonetheless did not prevent him from continuing his employment at K Mart or at least attempting other employment. Despite K Mart's vigorous closing argument to the contrary, the jury resolved this issue favorably to Spulak. In view of the evidence supporting that determination, we cannot agree that K Mart is entitled to

---

**3.** Defendant's exhibit H is the letter sent to Spulak informing him of the award of social security disability benefits. It states:
"If you return to work while you are still disabled, you may be entitled to a trial work period to test your ability to resume work. During this period you may work in as many

as 9 months (which need not be consecutive) and still receive your disability benefit payments no matter how high your earnings. After the trial work period has ended we will consider the work you did in determining whether you have shown by your work activity that your disability has ended."

prevail as a matter of law.[4]

#### D. Liquidated Damages

■ K Mart asserts that the evidence in this case does not support the jury's award of liquidated damages.

"A prevailing ADEA plaintiff is entitled to liquidated damages 'only in cases of willful violations.' 29 U.S.C. § 626(b). Congress intended to create a two-tiered liability scheme in which liquidated damages are 'punitive in nature.' *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126 [105 S.Ct. 613, 624, 83 L.Ed.2d 523] (1985). In *Thurston,* the Supreme Court found that 'a violation of the [Act] was "willful" if "the employer ... knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA."' *Id.* at 126 [105 S.Ct. at 624]. In order to impose liquidated damages under the ADEA for a 'willful' violation of the act, the plaintiff must show something more than mere knowledge on the part of the employer of the potential applicability of the ADEA."

*Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 635–36 (10th Cir.1988). In *Cooper,* we interpreted the *Thurston* standard to require examination of whether age was the *predominant* factor in the employer's decision. 836 F.2d at 1551. Because the *Cooper* record contained "such significant evidence of other possible motives that we cannot confidently say the jury would have found age was the 'predominant' determinative factor in Cooper's discharge," *id.* at 1552, we remanded for further consideration of willfulness. The record in the instant case, to the contrary, does not contain significant evidence of other legitimate motives.[5]

Although Spulak's discharge came shortly after a corporate restructuring to increase profits in K Mart's automotive departments, K Mart has never argued or offered evidence that Spulak's profits record was the reason for K Mart's conduct. The reasons upon which K Mart relies do not rise to the level of significance required by *Cooper.* The record contains persuasive evidence that using the back door and failing to sign in and out were minor and widespread policy violations that rarely, if ever, resulted in a written reprimand. The procedure Spulak followed in invoicing his set of spark plugs was previously condoned by K Mart management, and the work on his automobile was properly priced. Indeed, Price testified that although Spulak had not followed proper procedures, he had not taken company property. The disparity between the minor nature of Spulak's wrongdoing and the severity of K Mart's response, coupled with the evidence of remarks indicating concern with Spulak's age and the similar treatment of other older workers, satisfies the "something more" requirement set out in *Thurston, Cooper,* and *Anderson.* We therefore affirm the award of liquidated damages.

### V.

### ATTORNEY'S FEES

Finally, we address K Mart's contention that the trial court erred in its award of attorney's fees to Spulak. We begin our review of K Mart's arguments by pointing

---

**4.** Alternatively, K Mart argues that the damages awarded Spulak should be offset by the amount of disability benefits he received. We are at a loss to understand why K Mart raises this issue on appeal. The jury was instructed to deduct any amounts Spulak would not have received had he not been discharged, and it is apparent from the evidence and the amount of the award that the jury did so.

**5.** As was the situation in *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 636–37 (10th Cir. 1988), the instant case was briefed and argued before our decision in *Cooper.* "Prior to *Coo-*

*per,* our court applied Thurston's 'knew or showed reckless disregard' standard on a case-by-case basis." *Id.* at 636. In *Anderson,* we considered whether the record contained sufficient evidence of the " 'something more' which would support an award of liquidated damages under *Thurston,*" *id.* at 637, both as interpreted by *Cooper* and under prior case law. The jury in the case at bar was instructed according to the language of *Thurston,* and our discussion above under the *Cooper* standard establishes that the record supports an award of liquidated damages on our prior "case-by-case" basis as well. *See id.* at 636–37.

to the Supreme Court's emphasis on the district court's "discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). The fees awarded Spulak in this case were set in light of the trial court's conclusion that Spulak's attorneys should recover a fully compensatory fee because they obtained excellent results in a case that involved complex pretrial motions, important evidentiary issues, and was "bitterly contested from start to finish." Rec., vol. I, doc. 15, at 10.

■ K Mart argues that the court's decision to award Spulak's lead counsel $100 an hour is improper because it is ten dollars an hour more than his usual billing rate. A lawyer's customary billing rate is a relevant but not conclusive factor. *See Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir.1983). "The quality of the lawyer's performance in the case should also be considered in placing a value on his or her services." *Id.* The district court based the hourly rate upon the attorney's role as lead counsel in the case, concluding that "he exhibited advocacy and negotiation skills of high order." Rec., vol. I, doc. 15, at 11. The court recognized that the $100 per hour rate, "while $10 more per hour than his usual billing rate, is appropriate for his role in this type of case." *Id.* In so doing, the court drew upon its own knowledge of the value of legal services. We find no abuse of discretion, particularly in view of K Mart's failure to argue that the $100–an–hour rate is out of line with the rates prevailing in the community for lead counsel of comparable skills in similar cases. *See Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984).

■ K Mart next contends that the district court erred by refusing to reduce the award to reflect Spulak's lack of success on his state law claims. Spulak unsuccessfully asserted state law claims for age discrimination and outrageous infliction of emotional distress, both based on the same acts giving rise to his ADEA claim.

The Supreme Court has held that when a plaintiff bases his claims for relief on a common core of facts or on related legal theories and obtains excellent results, he should recover a fully compensatory fee. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* The district court here specifically followed *Hensley*, concluding that Spulak's attorney was entitled to be fully compensated because the claims were interrelated and the results obtained were excellent. K Mart's argument to the contrary is flatly contradicted by controlling case law.[6] We affirm the award of attorney's fees.

In sum, we find no merit in K Mart's arguments for reversal. The judgment of the district court is AFFIRMED.

---

**6.** K Mart also contends that the district court erred in awarding fees for duplication of effort. We find no indication in the record on appeal or in K Mart's brief that this argument was ever presented to the district court. *See* 10th Cir.R. 28.2(d). We therefore will not consider it here.