Shirley G. HUGHES, Carolyn T. Curry, and Ann G. Reeverts, Plaintiffs,

v.

The REGENTS OF THE UNIVERSITY OF COLORADO, Defendant.

Civil Action No. 95 N 2057.

United States District Court, D. Colorado.

Aug. 26, 1996.

Stephen Walsh Zweck–Bronner, Joanne Marie McDevitt, Simon P. Lipstein, Special Asst. Attys. Gen., University of Colorado, Denver, CO, for Defendant.

Ann G. Reeverts, Ronald E. Gregson, Hugh S. Pixler, Gregson & Pixler, P.C., Denver, CO, for Plaintiff.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

This is an employment-discrimination case which was tried to a jury of seven beginning April 29, 1996. The jury returned a verdict in favor of Plaintiff Shirley G. Hughes and against Defendant The Regents of the University of Colorado for sex discrimination and awarded plaintiff damages in the amount of $125,000.[1] Judgment entered on May 9, 1996. The matter is now before me on: (1) Plaintiffs "Motion for Front Pay Award" filed May 14, 1996; (2) "Defendant's Motion for New Trial or, in the Alternative, Remittitur" filed May 16, 1996; and (3) "Defendant's Motion for Attorney Fees on the Claims of Plaintiffs Carolyn T. Curry and Ann G. Reeverts" filed May 16, 1996.

### FACTS

Evidence at trial revealed that Ms. Hughes, a fifty-six-year-old woman, was employed by defendant at the University of Colorado, Colorado Springs campus. Plaintiff formerly worked in a supervisory position as director of auxiliary services, which was classified as an administrative program specialist II position. During a university budget-reduction process, defendant eliminated plaintiff's position and, in accordance with the state personnel system, "bumped" plaintiff to a different administrative program specialist II position in the college of business, where her responsibilities were significantly reduced. The jury concluded that defendant's conduct constituted sex discrimination under the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e to 2000e–17 (West 1994), amended by the Civil Rights Act of 1991, 42 U.S.C.A. § 1981(a) (West 1994) [hereinafter "title VII"], but that it did not constitute age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. §§ 621 to 634 (West 1985 & Supp.1996). The jury awarded plaintiff $125,000 on her sex discrimination claim, which represents compensatory damages for emotional distress, pain, suffering, and mental anguish.

### ANALYSIS

#### 1. Front Pay

Front pay is an equitable remedy intended to compensate for the continuing future effects of discrimination until the victim can be made whole. *See Pitre v. Western Elec. Co.,* 843 F.2d 1262, 1278 (10th Cir.1988); *see also Denison v. Swaco Geolograph Co.,* 941 F.2d 1416, 1424 (10th Cir. 1991) (deciding to follow line of authority which considers front pay to be an equitable question for the court). The court may award front pay in its discretion as a substitute for a promotion or reinstatement where such remedies are not feasible. *See Bruno v. Western Elec. Co.,* 829 F.2d 957, 966 (10th Cir.1987) (front pay is merely a substitute for reinstatement when reinstatement is not feasible); *see also Carter v. Sedgwick County,* 929 F.2d 1501, 1505 (10th Cir.1991) ("Decisions concerning front pay under Title VII fall within the trial court's discretion."). A plaintiff claiming front pay has the duty to take reasonable steps to mitigate such damages. *See Spulak v. K Mart Corp.,* 894 F.2d 1150, 1158 (10th Cir.1990); *Hansel v. Public Serv. Co. of Colo.,* 778 F.Supp. 1126, 1136 (D.Colo.1991). An employer who claims that a claimant did not exercise reasonable diligence in mitigating her damages has the burden of establishing the claimant's failure to mitigate. *See Hansel,* 778 F.Supp. at 1136 (citing *United States v. Lee Way Motor Freight, Inc.,* 625 F.2d 918, 937 [10th Cir. 1979]).

Plaintiff contends she is entitled to front pay because her former position as director of auxiliary services has been eliminated, and she therefore cannot be reinstated to that position. (Mot. for Front Pay Award ¶ 4 [filed May 14, 1996] [hereinafter "Pl.'s Mot."].) The overwhelming difficulty with plaintiff's theory is that the position into which she was "bumped" upon elimination of her former job is, in every significant way, the equivalent of her former job. The personnel classification (administrative specialist

---

**1.** The court dismissed Plaintiff Carolyn T. Curry's claims against defendant upon defendant's motion for judgment as a matter of law after plaintiffs case-in-chief. Plaintiff Ann G. Reeverts' claims against defendant were dismissed prior to trial as a result of defendant's motion for summary judgment.

II) is the same; the rate of pay is the same; the fringe benefits are the same; and plaintiff's new job, like her old one, is a full-time position. If one compares the two positions, it is impossible to discern that plaintiff is sustaining a loss which can properly be redressed by an award of front pay.

Recognizing the weakness inherent in directly comparing her former position with the position into which she "bumped," plaintiff theorizes that an award of front pay is appropriate because she is working in a job which "lacks the status, responsibility and opportunity for advancement that she enjoyed in her previous position of [d]irector of [a]uxiliary [s]ervices." (*Id.* ¶ 5.) According to plaintiff, she mitigated her damages by accepting a "lesser" position within the university system, rather than being terminated. (*Id.*) Thus, plaintiff argues, because the lesser position is not "reasonably equivalent" to her former position, she will suffer future economic harm for which she should be compensated by an award of front pay. (*Id.* ¶ 6.) *Cf. Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1553 (10th Cir.1988) (reinstatement must be to the employee's former position or one reasonably equivalent).

Under the theory discussed in the previous paragraph, plaintiff measures her degree of future economic harm by comparing the salary she earns as an administrative program specialist II with that which she could have earned if she had received a promotion to a position as an administrative program specialist III. (*See* Pl.'s Mot. ¶ 7.) Plaintiff states that she intends to offer evidence which would show that, assuming she would have qualified for an administrative program specialist III position, the estimated present value of the difference between her job as an administrative program specialist II position and the administrative program specialist III position is $128,909 to $167,800. (Pl's Mot. ¶ 7.)

Plaintiffs theory is flawed, for two reasons. First, I find it to be speculative and unsupported by a preponderance of the evidence in the case. To be sure, it was plaintiff's perception that her new supervisor, the dean of the business school, assigned her certain menial tasks and that the new job therefore lacked the status and responsibility of her old

job. While plaintiff's perception is entitled to some weight, I am satisfied (1) that, as time passed and the new supervisor became familiar with plaintiff's abilities, her duties expanded commensurate with those abilities and (2) that there was no real difference between the status of the two jobs. Even if a difference remained, however, I see no evidence that such a difference in any way could have affected plaintiff's ability to apply and compete for advancement to the level of administrative program specialist III. There is, in other words, no persuasive evidence that any difference between the two jobs affected plaintiff's chances of advancement.

There is a second flaw in plaintiff's theory: it ignores the circumstance that plaintiff has failed to apply for an administrative program specialist III position or any other position in the state personnel system. It is undisputed that, on December 28, 1995, defendant announced the opening of an administrative program specialist III position on the Colorado Springs campus. (*See* Def.'s Resp. to Pl.'s Mot. for Front Pay Award, Ex. 3 [Hilty Aff. ¶ 3] [filed May 24, 1996] [hereinafter "Def.'s Resp."].) Although plaintiff was eligible for that position, (*see id.*, Ex. 1 [Hilty Aff. ¶ 8], Ex. 2 [state personnel rules]), she did not apply, (*id.*, Ex. 3 [Hilty Aff. ¶¶ 3–4]). Moreover, since September 1, 1993, plaintiff has not applied for any available positions within the state personnel system. (*Id.*, Ex. 3 [Hilty Aff. ¶ 6].)

The law requires plaintiff to take reasonable steps to mitigate her damages before she may be eligible for front pay. *See Spulak*, 894 F.2d at 1158. I find that it was unreasonable as a matter of law for plaintiff not to apply for the available administrative program specialist III position in an effort to mitigate her purported damages. *See id.* Because plaintiff failed to mitigate her damages by applying for an available promotion, she is not entitled to receive an award for front pay. *See id.* Accordingly, plaintiff's request for front pay is denied.

## 2. Remittitur or New Trial

### a. Whether an Erroneous Jury Instruction Justifies a New Trial

Defendant argues that it is entitled to a remittitur or a new trial under rule 59 of

the Federal Rules of Civil Procedure based upon the excessiveness of the jury's award in this case. As the linchpin of its argument, defendant objects specifically to the court's jury instruction concerning expert witness testimony. According to defendant, the court's instruction on expert witness testimony prejudiced defendant because the only expert witness who testified during the trial was an economist who appeared solely on behalf of Carolyn T. Curry, who was no longer a plaintiff in this case when the court instructed the jury. Defendant argues that the expert witness's testimony and the court's instruction improperly caused the jury to award an excessive amount of damages *to Ms. Hughes.*

As previously noted, the court dismissed Ms. Curry from the case upon defendant's motion for judgment as a matter of law. Prior to the court's dismissal of Ms. Curry, however, she had presented testimony from an expert witness, Dr. Griffiths, in support of her claim for damages. (Def.'s Mot. for New Trial or, in the Alternative, Remittitur, Attach. 1 [Pl.'s Trial Ex. 102 (Griffiths' Resume and Economic Analysis of Ms. Curry)] [filed May 16, 1996] [hereinafter "Def.'s Mot."].) Dr. Griffiths had concluded that Ms. Curry suffered damages in a minimum amount of $119,271.24 in lost earnings. (*Id.*) The parties agreed to remove an exhibit from the jurors' notebooks which contained Dr. Griffiths' economic analysis of Ms. Curry's damages. (*See id.* at 2 n. 1.) Dr. Griffiths did not testify about Ms. Hughes' damages, and Ms. Hughes did not present any expert witnesses on her behalf.

Notwithstanding the dismissal of Ms. Curry from the case, the court gave the following standard jury instruction to the jurors:

The rules of evidence ordinarily do not permit witnesses to testify about their personal opinions. Any person whom the court has qualified as an "expert witness" is an exception to this rule. The law allows such witnesses to state their opinion concerning matters in which they profess to be expert, and it also allows them to state their reasons for the opinion.

The fact that the court has qualified certain persons as "expert witnesses" does not mean that the court is endorsing or approving their testimony. Nor does it mean that you should automatically believe them or that you should give their testimony extraordinary weight in your deliberations. It only means that the court thinks their testimony *might* be helpful to you. Judgments concerning the experts' credibility and the weight of the experts' testimony must still be made by you alone. You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.

(Court Instruction No. 2.8.)[2] Based upon that instruction, defendant contends that "the jury's attention was directed to the testimony of [Dr. Griffiths] by the reading of the instruction and that, without clarification, the lack of evidentiary foundation for the instruction was an improper cause which invaded the trial." (Def.'s Reply in Supp. of Mot. for New Trial, or in the Alternative, Remittitur [filed June 14, 1996].) Thus, defendant argues it is entitled to a remittitur of damages from $125,000 to $25,000, or alternatively, a new trial.

**2.** Defendant argues that it did not receive a copy of the court's standard instruction no. 2.8 prior to the time the court read that instruction to the jury. (Def.'s Mot. at 2.) Although the record is not entirely clear, I do not believe this to be the case. It is my standard practice, in accordance with Fed.R.Civ.P. 51, to inform counsel of my proposed instructions during an instructions conference preceding closing arguments. The clerk's file contains a copy of these instructions (including instruction 2.8), a circumstance which tends to confirm my belief that counsel received a copy of the instruction. Whether counsel received a copy of the instruction before it was read to the jury, however, is immaterial to my resolution of the issue, for it is clear that defendant objected to the substance of instruction no. 2.8 during a side-bar conference held after the jury had been instructed and before it began deliberations. I thus conclude that defendant adequately preserved the issue, although (for reasons elaborated in the text of this Order and Memorandum of Decision) the timing of defendant's objection caused me to reject defendant's proposed method of dealing with the problem.

Rule 59 of the Federal Rules of Civil Procedure provides that a court may grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). Generally, courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or substantial justice has not been done. *See Anthony v. Baker,* 808 F.Supp. 1523, 1525 (D.Colo.1992) (citation omitted). A motion for a new trial may raise errors of law arising out of jury instructions. *Id.* (citation omitted). A new trial is warranted where, having given full respect to the jury's findings and viewing the entire evidence, the trial judge is left with the "definite and firm conviction" that a mistake has been committed. *Id.* (citing *Landes Constr. Co. v. Royal Bank of Canada,* 833 F.2d 1365, 1371–72 [9th Cir.1987]). The decision to grant a new trial rests within the sound discretion of the district court. *Id.* (citing *Beacham v. Lee–Norse,* 714 F.2d 1010 [10th Cir.1983]).

I continue to believe that any error in giving the jury the standard instruction concerning expert witnesses was harmless and that defendant's proposed method of dealing with the problem would have confused the jury by focusing undue attention on the instruction. There was no doubt that Dr. Griffith's testimony concerned only Ms. Curry, and all of Dr. Griffith's documentation pertained solely to Ms. Curry; indeed, the expert's documentation was not even before the jury during its deliberations. The closing argument of plaintiffs counsel did not mention the expert's testimony in discussing Ms. Hughes' damages. In these circumstances, it is fanciful to suggest that the jury somehow misapplied the general expert-witness instruction to this evidence and was misled into thinking that Dr. Griffith's testimony applied to Ms. Hughes.

### b. *Excessiveness of the Jury Verdict*

Even though defendant's argument concerning the effect of the expert-witness instruction is speculative and implausible, there nonetheless remains an issue concerning whether the evidence supports a damage award of § 125,000 here. If a damage award is excessive or so large as to appear contrary to reason, a remittitur is the appropriate relief. *See Brunnemann v. Terra Int'l, Inc.,* 975 F.2d 175, 178 (5th Cir.1992) (citations omitted). "A remittitur is in order when a trial judge concludes that a jury verdict is 'clearly unsupported' by the evidence and exceeds the amount needed to make the plaintiff whole, *i.e.,* to remedy the effect of the employer's discrimination." *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1100 (3d Cir.1995). A court should not reduce a damage award merely because it would have chosen to award less money. *See Gumbs v. Pueblo Int'l, Inc.,* 823 F.2d 768, 773 (3d Cir.1987). Rather, the court must determine whether there is a rational relationship between the specific injury sustained and the amount of damages awarded. Id. A court may look at awards in similar cases to determine whether an award is excessive. *See Sassaman v. Heart City Toyota,* 879 F.Supp. 901, 911 (N.D.Ind.1994). The law requires that all damage awards be supported by substantial evidence. *See Wulf v. City of Wichita,* 883 F.2d 842, 874 (10th Cir.1989) (citation omitted).

As previously noted, plaintiff's $125,000 award necessarily reflects damages for emotional distress, pain, suffering, and mental anguish. There was simply no evidence concerning diminution is salary, decreased benefits, or other similar economic losses. That award is based solely on plaintiff's own testimony. At trial, Ms. Hughes described the effects she believed defendant's discriminatory treatment had on her. Plaintiff testified that, during the university's budget-reduction process, her supervisor informed her that she would no longer be performing academic advising, that the university did not know what she would be doing, and that the university had "no need for her skills." As a result, plaintiff said she felt devastated and humiliated, and that, once bumped into her new position, she received very little direction or, training. Plaintiff stated that she believed her supervisor was trying to get rid of her and that her future career plans were destroyed. During cross-examination, plaintiff conceded that she never sought treatment for any emotional or physical problems.

In reviewing this evidence, I focus first on the fact that the jury (upon sufficient evi-

dence) found that Ms. Hughes was the victim of intentional sexual discrimination. Defendant's actions were undoubtedly hurtful and caused her emotional distress and mental anguish. An award of damages, in more than a nominal amount, is supported by the evidence. The evidence also demonstrates, however, that Ms. Hughes was fortunate enough to "bump" into a job which (as I have previously noted) was equivalent to her old job in pay, hours, and benefits. She did not suffer the emotional distress which would be expected to accompany the loss of a job or a decrease in earnings, and her degree of stress was not so severe as to require counseling or other professional treatment. For these reasons, I find that, although some award was proper based on this record, the award given by the jury was clearly excessive.

My conclusion that $125,000 is an excessive award in these circumstances finds support in this circuit and elsewhere. *See, e.g., Wulf,* 883 F.2d at 875. In *Wulf,* the Tenth Circuit held that an award of $250,000 in damages for emotional distress was excessive and remanded the case for reconsideration and an award of damages not to exceed $50,000. In that case, a former police officer brought a civil rights action against the city and its administrators following his termination. The plaintiff in that case, Mr. Wulf, testified that, as a result of defendant's behavior, his job was "very stressful," and he was angry, depressed, scared, and frustrated. *Id.* Wulf's wife testified that he was under "tremendous emotional strain" and that they experienced significant financial difficulties. *Id.* Recognizing the lack of descriptive evidence of emotional distress, the Tenth Circuit held that, although some award was warranted for emotional damages, $250,000 was clearly excessive. *Id.* The *Wulf* court looked to other awards given in connection with alleged emotional damages and held that $50,000 was the maximum reasonable award in that case. *See id.* (citing *Wren v. Spurlock,* 798 F.2d 1313 [10th Cir.1986], *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 145 [1987] [plaintiff received damages totaling $113,000, a portion of which represented lost income, where her distress was so severe she was unable to work];

*Spence v. Board of Educ.,* 806 F.2d 1198, 1200–01 [3d Cir.1986] [no recovery for emotional distress where plaintiff testified she was "depressed and humiliated by retaliatory transfer"]; *Ramsey v. American Air Filter Co.,* 772 F.2d 1303, 1313–14 [7th Cir.1985] [and cases cited therein] ).

Damages awarded solely for emotional distress in discrimination cases arising under title VII and related statutory provisions are typically less than $50,000. *See, e.g., Odima v. Westin Tucson Hotel,* 53 F.3d 1484 (9th Cir.1995) ($10,000 awarded for pain and suffering where plaintiff testified to feelings of frustration, helplessness, and isolation after defendant rejected his six transfer applications and made racial comments about plaintiff); *EEOC v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276 (7th Cir.1995) ($50,000 awarded to plaintiff where plaintiff and his family testified that he suffered from depression, rage, and fear resulting from his sudden firing); *Meyers v. City of Cincinnati,* 14 F.3d 1115 (6th Cir.1994) ($25,000 awarded for mental anguish, humiliation, and loss of reputation for wrongful termination where plaintiff lost ten pounds as a result of depression, suffered from insomnia, and took medication for related stomach problems); *Johnson v. Hale,* 13 F.3d 1351 (9th Cir.1994) (awarding $3500 per plaintiff to black men who were denied rental of an apartment because they were "negro"); *Miner v. City of Glens Falls,* 999 F.2d 655 (2d Cir.1993) ($12,000 to police officer who was denied due process and forced to retire where officer had considered suicide and suffered feelings of inadequacy, humiliation, and embarrassment at being forced to apply for public assistance); *Butcher v. City of McAlester,* 956 F.2d 973 (10th Cir.1992) (court reversed $15,000 awards for humiliation where plaintiffs also received $15,000 awards for mental pain and anguish resulting from city's union-busting activities); *Littlefield v. McGuffey,* 954 F.2d 1337 (7th Cir.1992) ($50,000 awarded to plaintiff where defendant agreed to rent apartment to white woman, but changed his mind after meeting her black boyfriend); *Secretary, U.S. Dept. of Housing and Urban Development, on Behalf of Herron v. Blackwell,* 908 F.2d 864 (11th Cir.1990) ($40,000 awarded where de-

fendant refused to sell home to black plaintiffs who testified they suffered physical symptoms from emotional distress including headaches and loss of sleep); *Cowan v. Prudential Ins. Co.*, 852 F.2d 688 (2d Cir.1988) ($15,000 awarded for severe emotional distress as a result of race discrimination in employment where plaintiffs home life suffered and he began drinking heavily); *Wade v. Orange County Sheriff's Office*, 844 F.2d 951 (2d Cir.1988) ($50,000 awarded for emotional damages where plaintiff suffered humiliation at work as a result of defendants' racially motivated harassment); *Webb v. City of Chester*, 813 F.2d 824, 836–37 (7th Cir. 1987) (reviewing cases and concluding that cases upholding damages resulting from illegitimate firings "ranged from a low of $500 to a high of over $50,000"); *Fernot v. Crafts Inn, Inc.*, 895 F.Supp. 668 (D.Vt.1995) ($48,000 awarded for severe emotional distress with physical manifestations where plaintiff was subjected to sexual comments, unwanted physical contact, and termination); *Dombeck v. Milwaukee Valve Co.*, 823 F.Supp. 1475 (W.D.Wis.1993) ($25,000 awarded for anxiety disorder caused by sexual harassment and improper touching), *vacated on other grounds*, 40 F.3d 230 (7th Cir.1994). Where large awards do not involve concrete economic damages, courts have ordered a remittitur. *See Chonich v. Wayne County Community College*, 874 F.2d 359 (6th Cir.1989) ($450,000 award excessive where plaintiff offered no medical evidence that he had suffered heart attack as a result of alleged employment discrimination); *Cygnar v. City of Chicago*, 865 F.2d 827 (7th Cir.1989) (remittitur from $55,000 to $15,000 for emotional distress in discrimination claim against city police department); *Darby v. Heather Ridge*, 827 F.Supp. 1296 (E.D.Mich.1993) ($187,160 award for emotional distress reduced to $37,160 where the only evidence of plaintiffs' emotional distress resulting from race discrimination was their testimony that they were very sad, depressed, and suffered from loss of self-esteem).

█ Based upon the review of cases noted in the above paragraph and the record in this matter, I find that the maximum reasonable amount of emotional damages the jury could have properly awarded to plaintiff is $50,000. *See Wulf*, 883 F.2d at 875. I therefore grant defendant's motion for remittitur and reduce the $125,000 award to plaintiff by $75,000, for a total award of $50,000. *See* Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2518, at 167–68 (2d ed.1995) (noting reduction to the highest amount that the jury could properly have awarded). A remittitur of compensatory damages, however, may not be entered without plaintiff's consent. *See id.*, at 169. Thus, although I deny defendant's motion for a new trial and grant its motion for remittitur to the extent stated herein, my denial of the motion for new trial is conditioned upon plaintiff filing an acceptance of a remittitur of compensatory damages. Should plaintiff not consent to the remittitur noted herein, a new trial on damages will be held.

### 3. Attorney's Fees

#### a. Attorney's Fees Under Title VII and the ADEA

Plaintiffs Curry and Reeverts each unsuccessfully brought claims against defendant for sex discrimination under title VII and age discrimination under the ADEA. As previously noted, Ms. Curry's claims were dismissed as a matter of law after the close of plaintiffs' case, and Ms. Reeverts' claims were dismissed upon defendant's motion for summary judgment. Accordingly, defendant, as the prevailing party, requests an award of attorney's fees with respect to those claims. (Def.'s Mot. for Atty's Fees on the Claims of Pls. Carolyn T. Curry and Ann G. Reeverts [filed May 16, 1996] [hereinafter "Def's Mot. for Fees"].)

##### (i) Title VII

█ It is within the district court's discretion to award attorney's fees to a prevailing defendant in a title VII action upon a finding that the action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978); 42 U.S.C.A. § 2000e–5(k). The standard has been described as a "stringent one." *See Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (involving

award of attorney's fees to prevailing defendants in 42 U.S.C.A. § 1983 actions). The Supreme Court has cautioned that, in applying these criteria, the district court should resist the temptation to conclude that because a plaintiff did not ultimately prevail, the action must have been unreasonable or without foundation. (See *Christiansburg Garment*, 434 U.S. at 421–22, 98 S.Ct. at 700–01). To determine whether a prevailing defendant is entitled to attorney's fees under title VII, the district court must focus on the question of whether the case is seriously lacking in arguable merit. See *Walker v. NationsBank*, 53 F.3d 1548, 1558 (11th Cir. 1995) (citation omitted).

■ Courts have identified three general factors which should guide the *Christiansburg Garment* inquiry: (1) whether plaintiff established a *prima facie* case of sex discrimination; (2) whether defendant offered to settle the dispute prior to trial; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. *Id.* at 1559. In order to award attorney's fees against a plaintiff in a title VII action, the court must be persuaded that there is no evidence of sex discrimination in the record. See *Montgomery v. Yellow Freight Sys., Inc.*, 671 F.2d 412, 414 (10th Cir.1982).

■ I first address the motion for fees against Ms. Reeverts, since I regard the issue presented as a clear one. As discussed in my April 22, 1996, Order and Memorandum of Decision, Ms. Reeverts produced no evidence that she was treated differently than anyone else in her position during defendant's budget-reduction process. At the summary judgment stage, the record was completely devoid of any evidence of sex discrimination against Ms. Reeverts. (Order and Mem. of Decision at 14.) Ms. Reeverts' injury was sustained solely as the result of the manner in which defendant's "bumping" system operated, and this should have been readily apparent early in the case. Thus, pursuant to title VII and the law established in *Christiansburg Garment*, I find that defendant is entitled to reasonable attorney's fees in connection with Ms. Reeverts' claim of sex discrimination because her claim was determined to be wholly without foundation on a motion for summary judgment. See *Christiansburg Garment*, 434 U.S. at 421, 98 S.Ct. at 701.

■ The motion for fees against Ms. Curry is more problematic. After the close of plaintiffs' evidence, I granted defendant's motion for judgment as a matter of law with respect to Ms. Curry's claims because Ms. Curry failed to produce any evidence that she was treated differently from any similarly situated person at the university. Earlier, in ruling on defendant's motion for summary judgment on Ms. Curry's claim, I had concluded that, although Ms. Curry was not replaced by a male, her *prima facie* case could be established based upon evidence that she was treated less favorably than a male employee during the reduction-in-force process which occurred in this case. (See Order and Mem. of Decision at 10–11 [filed Apr. 22, 1996].) Ms. Curry survived summary judgment because she provided evidence that a younger male, Steve Miller, received more favorable treatment than she during the budget-reduction procedure which led to the employment changes at issue here. (*Id.* at 12.) At trial, however, Ms. Curry wholly failed to produce any evidence that she was treated differently than any similarly situated males because Steven Miller was not similarly situated to Ms. Curry. Ms. Curry's sex discrimination claim was therefore determined to be without foundation. See *Nesmith v. Martin Marietta Aerospace*, 833 F.2d 1489, 1491 (1 1th Cir.1987) (plaintiff's title VII claim without foundation where he could not show that other similarly situated members of the unprotected class were treated preferentially). Although Ms. Curry produced evidence sufficient to survive summary judgment, her evidence proved insufficient to produce a *prima facie* case of discrimination at trial.

Although I found at the conclusion of plaintiffs' evidence that Ms. Curry had failed to establish a *prima facie* case, I nonetheless decline to award attorney fees against her. In dismissing Ms. Curry's case at trial, I expressed some surprise and concern as to why she had not produced at trial the evidence previously submitted in opposing the

motion for summary judgment. I recognize, however, that the trial process can produce unanticipated results. Witnesses may unexpectedly become unavailable; they may change their testimony; and other tactical considerations may suggest that calling them would prove unwise. This, I suppose, is why one of the *Christiansburg* considerations is whether the court dismissed the claim before trial or during trial. Because there was *prima facie* evidence of sex discrimination in the summary judgment record, I will not award fees against Ms. Curry. *See Montgomery,* 671 F.2d at 414.

#### (ii) ADEA

■ Although the ADEA does not expressly provide for the payment of attorney's fees to a prevailing defendant, such fees may be awarded upon a showing that plaintiff litigated the action in "bad faith, vexatiously, wantonly, or for oppressive reasons." *See EEOC v. Hendrix College,* 53 F.3d 209, 211 (8th Cir.1995) (citation omitted). Notwithstanding my findings with regard to defendant's right to collect attorney's fees in connection with Ms. Reeverts' claim of sex discrimination, the same cannot be said with respect to her claim of age discrimination. The standard for obtaining fees under the ADEA is more stringent than that which applies in title VII cases. *See id.* Here, there is absolutely no evidence that Ms. Reeverts' claim of age discrimination was brought in bad faith, vexatiously, wantonly, or for oppressive reasons. *See Hendrix,* 53 F.3d at 211. Thus, defendant's motion for attorney's fees is denied with respect to Ms. Reeverts' claim of discrimination under the ADEA.

#### b. Reasonable Amount of Attorney's Fees

In accordance with the lodestar analysis, compensable attorney's fees are determined by multiplying a reasonable billing rate by a reasonable estimation of hours expended on professional services. *See Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989) (awarding attorney's fees in a civil-rights action); *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Defendant seeks compensation for two attorneys' time billed in connection with its case; however, only one attorney, Simon Lipstein, billed any time in connection with Ms. Reeverts' claim of sex discrimination.

■ Mr. Lipstein's billable hourly rate was $125. (Def.'s Mot. for Fees at 6–7.) To support its request for fees, defendant provides testimony from Thomas B. Kelley, Esq., an attorney licensed to practice in Colorado who is experienced in litigating civil-rights cases. (Decl. of Thomas B. Kelley [filed May 23, 1996].) Kelley testifies to the reasonableness of defendant's counsel's rates in the Denver community. (*Id.*) Plaintiffs do not object to defendant's counsel's hourly rate. Accordingly, I find that Mr. Lipstein's hourly rate in this matter represents the reasonable value of his service in the community. Under the lodestar analysis, I must now determine the reasonable amount of hours expended on defendant's case with respect to Ms. Reeverts.

■ As of the date this court dismissed Ms. Reeverts' claims in response to defendant's motion for summary judgment, Lipstein had worked 177.50 hours on this case. (Def.'s Mot. for Fees at 6.) Because there were three plaintiffs involved, Lipstein attributes one third of his 177.50 hours, or fifty-nine hours, to each plaintiff. (*Id.,* Attach. [Aff. of Attorney's Fees From Simon Lipstein ¶ 6].) Thus, with respect to time billed prior to this court's dismissal of Ms. Reeverts' claims, defendant seeks compensation for fifty-nine hours attributable to work defending against Ms. Reeverts' discrimination claims.

Plaintiffs argue that "the amount of fees claimed by defendant is excessive." (Resp. to Def.'s Mot. for Attorney Fees on the Claims of Pls. Carolyn T. Curry and Ann G. Reeverts ¶ 12 [filed May 30, 1996].) According to plaintiffs, "[a]n award of attorney's fees should ordinarily reflect the degree of success obtained"; yet, they offer no facts or analysis to support their position. (*Id.* [citing *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940].) Plaintiffs' general objection is essentially meaningless. It provides no assistance in determining the reasonable amount of de-

fendant's hours in this matter. Rather than approve defendant's requested fees *in toto,* however, I find that a downward adjustment is appropriate because defendant is not entitled to recover fees in connection with Ms. Reeverts' ADEA claim for the reasons set forth in this order. *See Whalen v. Unit Rig, Inc.,* 974 F.2d 1248, 1254 (10th Cir.1992) (" 'Reasonably expended' hours would not include time spent on claims 'unrelated' to those on which [defendant] prevails.") (citation omitted), *cert. denied,* 507 U.S. 973, 113 S.Ct. 1417, 122 L.Ed.2d 787(1993).

 When a party does not prevail on all matters, the district court must determine whether the fee award should be reduced to reflect less than total success. *Cf Hernandez v. George,* 793 F.2d 264, 268 (10th Cir.1986) ("If a plaintiff does not prevail on all claims, the district court must determine whether the fee award should be reduced to reflect less than total success."). In determining whether to reduce an attorney fee award the court should consider the results obtained, the importance of the issues on which defendant prevailed, and whether the claims on which defendant prevailed were related to the unsuccessful claims. *See id.* (affirming trial court's assessment of a fifty percent adjustment based upon plaintiffs success rate). A fully compensatory fee is permitted, however, where claims for relief were based on a common core of facts even though defendant did not prevail on every matter. *See generally Whalen,* 974 F.2d at 1254; *Spulak,* 894 F.2d at 1160 (no reduction in fee award where plaintiff succeeded on constructive discharge claim, but unsuccessfully asserted state law claims for age discrimination and intentional infliction of emotional distress); *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir., 1986) (fees awarded where plaintiff succeeded on sex-discrimination claim, but failed to prove constructive discharge at trial).

Defendant contends that hours spent in defense of Reeverts' sex-discrimination claim are indistinguishable from the hours spent in defense of her age-discrimination claim. (Def.'s Mot. for Fees at 7.) I disagree. I find that Reeverts' claims for age and sex discrimination are sufficiently distinct to permit defendant and this court to allocate the amount of time defendant's counsel billed between those two claims for relief. In other words, while defendant may collect fees expended in connection with its defense to Ms. Reeverts' sex-discrimination claim, it is not entitled to recover fees billed in connection with its defense to Ms. Reeverts' age-discrimination claim, as the ADEA does not permit an award of fees to defendant under the facts and circumstances presented here. *See Hendrix College,* 53 F.3d at 211. I thereby reduce defendant's request for fees by fifty percent. *See Whalen,* 974 F.2d at 1254. I therefore conclude that defendant is entitled to recover one-half of Lipstein's fifty-nine hours regarding work related to Ms. Reeverts' claim of sex discrimination. At $125 per hour, that results in an award of $3687.50.

## 4. Conclusion

Based on the foregoing, it is therefore

ORDERED as follows:

a. Plaintiff's motion for front pay is DENIED.

b. Defendant's motion for remittitur is GRANTED. The damages awarded to Ms. Hughes are reduced to $50,000. If plaintiff fails to file an acceptance of remittitur within twenty days of the date this order is entered, the court will schedule a new trial on damages only.

c. Defendant's motion for a new trial is conditionally DENIED, pending plaintiff's acceptance of the remittitur.

d. Defendant's motion for attorney's fees is GRANTED in part and DENIED in part. The motion for fees is GRANTED in the amount of $3687.50. The motion is denied in all other respects.