96 F.3d 1451
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William SMITH, Plaintiff-Appellee,
v.
AIRBORNE FREIGHT CORPORATION, Defendant-Appellant.
 No. 95-15348.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 15, 1996.
Decided Sep. 6, 1996.
 
 1
 Before: PREGERSON and TROTT, Circuit Judges, and WINMILL, District Judge.*
 
 
 2
 MEMORANDUM**
 
 OVERVIEW
 
 3
 Defendant-Appellant Airborne Freight Corporation ("Airborne") appeals the district court's denial of its motion for judgment notwithstanding the verdict (JNOV) and its alternative motion for a new trial, and challenges several evidentiary rulings made by the district court. Plaintiff-Appellee William Smith alleges that this appeal is frivolous and seeks damages and costs under Fed.R.App.P. 38. We have jurisdiction under 28 U.S.C. § 1291. Because we conclude that prejudicial and damaging testimony improperly admitted against Airborne deprived it of substantial rights at trial, we reverse and remand.
 
 FACTS
 
 4
 Smith, an African American, worked as a delivery driver at Airborne's Oakland facility from 1989 to 1993. His duties included receiving and delivering packages. He maintained a good employee record until April 1993.
 
 
 5
 In April 1993, a computer consigned to Airborne for delivery was determined to be missing and, according to Airborne's records, Smith was the last person to have had it in his possession. Airborne opened an investigation. Airborne's Loss Prevention Security Manager, William Gilstrap, personally conducted the investigation. Smith had reported to his direct supervisor, Mike Hailey, that he attempted to deliver the computer to an apartment address, but when no one answered, he left the computer outside the apartment door. Gilstrap was apparently unaware of this explanation when he conducted the investigation because he did not contact Hailey until after the investigation was completed.
 
 
 6
 After an initial investigation, Gilstrap concluded that Smith had stolen the computer. He reached this conclusion before speaking with Smith but after learning that Smith was African American.
 
 
 7
 Gilstrap then arranged through Airborne's Oakland Station Manager for the union shop steward to be present in the room with Smith during a telephonic interview. Gilstrap took this step in accord with the collective bargaining agreement "[b]ecause it's a union station, an employee that is going to be discussed or interviewed, where this discussion or interview may lead to disciplinary action, has the right to have a shop steward, or union rep present if that employee so desires." The "union rep" in this case was Chief Steward Ron Ramos. Gilstrap and Ramos apparently talked briefly on the telephone before this interview.
 
 
 8
 Because Gilstrap believed that Smith had stolen the computer, Gilstrap was confrontational during the interview. He directly accused Smith of stealing the computer and threatened Smith with immediate arrest by the Federal Bureau of Investigation and local authorities. Gilstrap then told Smith that if he resigned, Airborne would immediately stop its investigation. Smith asked Ramos, who was present on Smith's end of the conversation, for his advice, and Ramos said, "Well, if it was me, I'd sign it." Smith then left the room to retrieve an unsigned letter of resignation previously given to him by Ramos. Smith then signed it in the presence of the station manager, Ed Pierce, and resigned.
 
 
 9
 The next day, Smith attempted to retract his resignation on the ground that it was coerced. Airborne refused to reinstate him. Smith requested an investigation of the matter, but Airborne also refused this request. Smith filed a grievance with Airborne's union-employer grievance committee through his union on May 4, 1993. On June 14, 1993, the grievance committee denied Smith's claim, stating that the "[c]ase is improper due to grievant no longer being an employee since there exists a signed resignation."
 
 
 10
 Smith then filed an unfair labor practice charge with the National Labor Relations Board (the "Board"), charging that Ramos colluded with Airborne to coerce his resignation. The Board refused to issue a complaint. Smith appealed the Board's decision, but the Board denied his appeal.
 
 PROCEDURAL BACKGROUND
 
 11
 On January 14, 1994, Smith filed suit in the United States District Court against Airborne and the International Brotherhood of Teamsters Union (the Union).[1] The district court dismissed on summary judgment all of Smith's causes of action except his claim that Airborne discriminated against him because of his race. No causes of action against the Union survived summary judgment, and Smith did not appeal the district court's grant of summary judgment.
 
 
 12
 Before trial, Airborne unsuccessfully made motions in limine to have evidence excluded relating to: 1) alleged discrimination by Ron Ramos; and 2) incidents of alleged discrimination against other employees. Airborne argued that the challenged evidence was irrelevant and highly prejudicial. During trial, Airborne continued to object to the challenged evidence, but the district court overruled the objections.
 
 
 13
 After the close of evidence, Airborne moved for a directed verdict pursuant to Fed.R.Civ.P. 50(a). The district court denied the motion. On December 14, 1994, a unanimous jury returned a general verdict in favor of Smith in the amount of $370,787. On December 29, 1994, Airborne filed a motion for judgment notwithstanding the verdict and, in the alternative, a new trial. The district court denied both motions. Airborne now appeals, arguing: 1) that the decision in the prior union-employer grievance proceeding precludes a finding of employment discrimination; and 2) that the district court's evidentiary rulings constituted prejudicial error.
 
 
 14
 * Preclusion of Factual Issues
 
 
 15
 As a threshold matter, Airborne alleges that the union-employer grievance committee determined that Smith stole the computer, that Smith's resignation was voluntary, and that Ramos was not acting as Airborne's agent. Airborne asserts that the district court should not have allowed Smith to offer any evidence that undermined the grievance committee's purported factual findings. Airborne maintains that allowing Smith to offer proof that undermined these purported findings materially affected the jury's verdict. Airborne also maintains that, because these purported findings show that Airborne had cause to discharge Smith, the district court should have granted Airborne's motion for JNOV. We disagree.
 
 
 16
 After Airborne refused to allow Smith to retract his resignation and refused Smith's request to investigate the matter, Smith filed a grievance with Airborne's union-employer grievance committee. The grievance committee denied Smith's claim, writing only two sentences in its report form: "Based on the facts presented the claim of Smith is denied. G[rievance] Impropriety: Case is improper due to grievant no longer being an employee since there exists a signed resignation." The most plausible interpretation of the report is that the grievance committee denied Smith's claim because it believed the case was improperly before the committee. But even if we ignore the second sentence, Airborne's argument is without merit. The grievance committee report contains no factual findings whatsoever. Thus, there is no basis for Airborne's argument that the grievance committee ever found that Smith stole the computer, that Smith's resignation was voluntary, and that Ramos was not acting as Airborne's agent.
 
 II
 Admission of Prejudicial Evidence
 
 17
 A district court's decision concerning a motion for a new trial pursuant to Fed.R.Civ.P. 59 is reviewed for abuse of discretion. California Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1405 (9th Cir.1995). Evidentiary rulings are also reviewed for abuse of discretion and should not be reversed absent some prejudice. City of Long Beach v. Standard Oil Co. of California, 46 F.3d 929, 936 (9th Cir.1995).
 
 A. Smith's Testimony About Ramos
 
 18
 During his direct examination, Smith was permitted to testify about allegedly relevant discriminatory behavior and comments by Chief Steward Ron Ramos that occurred not during the computer investigation, but on previous occasions. We conclude on review that this evidence was improperly admitted because it was: 1) inadmissible hearsay and 2) irrelevant.
 
 
 19
 It is clear from the record that Ramos was acting as Union steward, not as an Airborne employee, when he made the "brothers" comment. He was specifically trying to get the African-American teamsters to pay him money so he would represent them as members of the Union.
 
 
 20
 The record before us is devoid of probative evidence that would establish an employment relationship or collusion between Ramos and Airborne that would suffice to impute either Ramos's behavior or any of his unfortunate statements to Airborne. The telephonic contact between Ramos and Gilstrap prior to the interrogation examined in the light most favorable to Smith reveals nothing remotely inconsistent with Ramos's union role in this matter on behalf of Smith. Simply put, no grounds have been shown on this record on which to visit actual or apparent authority upon Ramos as an agent of Airborne. The mistake made by the district court at the urging of counsel for Smith was to equate Ramos's employee status with company authority. To stick Airborne on this record with any of Ramos's behavior on other occasions was clearly improper.
 
 
 21
 At the time of trial, the Union was no longer a party to the suit. Therefore, Ramos's statement made during his role as shop steward was not a statement by a party's agent concerning a matter within the scope of the agency, and Ramos was not a party-opponent for Rule 801(d)(2)(D) purposes. Therefore, Smith's testimony about Ramos's comment constituted inadmissible hearsay under Rule 802, and the district court abused its discretion by admitting the testimony about the "brothers" comment.
 
 
 22
 Second, any evidence related to how effectively Ramos represented Smith and to Ramos's discriminatory animus was irrelevant to the immediate action. This evidence was highly prejudicial and had the potential to confuse the jury. In short, the evidence lacked probative value, was highly prejudicial, and should have been excluded under Federal Rules of Evidence 402 and 403.
 
 
 23
 Accordingly, we conclude that the district court abused its discretion by allowing Smith to testify about Ramos's alleged discriminatory animus.
 
 B. Hernandez' Testimony About Ramos
 
 24
 For similar reasons, we find that the district court abused its discretion in allowing Frank Hernandez, another Airborne employee, to testify about Ramos's unrelated discriminatory comments and behavior. His direct testimony related to Ramos was as follows:
 
 
 25
 Q. Now ... Mr. Hernandez, you know Ron Ramos; Correct?
 
 
 26
 A. Yes.
 
 
 27
 ....
 
 
 28
 Q. All right. Have you ever ... witnessed anything that he has done that you perceived to be racist?
 
 
 29
 TR. at 426. At this point Defense Counsel objected based on Rules 401, 402, and 403, and the objection was overruled. The questioning continued:
 
 
 30
 A. He took me to a room and showed me a seniority list that he had inked out, and all the minorities didn't give to his collection.
 
 
 31
 And he instructed me to go to another black person and ask him why none of the blacks gave to his collection.
 
 
 32
 And ... he's very greedy for money. And he told me that he would never forget what they did to him.
 
 
 33
 Q. And who--who was "they" that he was referring to? Mr. Ramos?
 
 
 34
 ....
 
 
 35
 A. He was referring to all the blacks that didn't give.
 
 
 36
 TR. at 426-27.
 
 
 37
 First, the testimony addressing what Ramos said should have been excluded as inadmissible hearsay under Rule 802. Again, this statement was not an "admission by party-opponent" because when the statement was made Ramos was acting as the Union steward, not on behalf of the company; and second, the testimony about Ramos's discriminatory behavior as Union steward was irrelevant to the claim of discrimination against Airborne. This irrelevant evidence was highly prejudicial and had the potential to confuse the jury by permitting it to impute Ramos's discriminatory conduct and comments to Airborne. Therefore, the district court abused its discretion by not excluding this evidence under Rules 402 and 403.
 
 
 38
 C. Hernandez' Testimony About Discrimination Against A Fellow Employee
 
 
 39
 We next address the district court's admission of Hernandez's testimony about Airborne's alleged discrimination against another Airborne employee. Hernandez testified that when he was acting as union steward, "Michelle," an African-American girl, had come to him regarding an incident of discrimination. "Michelle" herself did not testify.
 
 
 40
 This testimony, solicited with a leading question, constituted inadmissible hearsay. Hernandez testified that the woman told him that she wasn't treated fairly because of her race. This was precisely the type of hearsay that Rule 802 is intended to exclude. The explanation that it was not being offered for truth of the matter stated is not persuasive. As pointed out by defense counsel, if it was not offered for truth of the matter stated, then the evidence was irrelevant. This statement was obviously offered for truth of the matter stated--i.e., to show that another employee felt that she was discriminated against because of her race. Thus, Hernandez's testimony about "Michelle's" statements to him should have been excluded under Rule 802, and the district court abused its discretion by allowing this testimony.
 
 
 41
 D. Hernandez's Testimony About Discrimination Against Himself
 
 
 42
 Hernandez, who is Mexican, testified that he felt he had been subjected to age and racial discrimination during Airborne's hiring process. Specifically, Hernandez testified that when he tried to be hired as a full-time employee, as opposed to his employment on "a casual basis," he "had some difficulty": Defense counsel objected to this testimony pursuant to Federal Rules of Evidence 401, 402, and 403, as irrelevant and highly prejudicial, but the district court overruled the objections.
 
 
 43
 The district court should have excluded this testimony under Rule 403 because its prejudicial effect substantially outweighed its probative value. We note at the outset that Hernandez essentially testified that he "figured" that discrimination had slowed Airborne's decision to hire him. This speculative quality weakened the probative value of Hernandez's testimony.
 
 
 44
 Furthermore, many factual differences distinguish Hernandez's claims of discrimination from Smith's. First, Airborne hired Hernandez. This fact alone somewhat minimizes the effectiveness of Hernandez's testimony as proof that Airborne discriminates.
 
 
 45
 Second, Hernandez testified that it was the station manager, Mike Hailey, who did not advance him from "casual" to full-time status. Mr. Hailey was not involved in Smith's resignation interview. In fact, the record indicates that Smith and Hailey were on good terms. Smith testified that he "got a lot of compliments ... from Mike Hailey about my work ethics." TR. at 93. Later, when explaining the events surrounding the missing computer, he testified that when he told Hailey that the computer was gone, Hailey said, "Don't worry about it, William. We'll take care of it." TR. at 101-02. Then, when Gilstrap began interrogating Smith about the alleged theft of the computer, Smith kept telling Gilstrap to contact Hailey. TR. at 108, 115, 118, 119.[2] Thus, the alleged discrimination against Hernandez was at the hand of someone that Smith felt was "on his side," not a manager who was involved in the Smith's resignation interview.
 
 
 46
 Third, Hernandez's testimony involved allegations of different forms of discrimination. To a large extent, his testimony revealed that he felt discriminated against on the basis of age, which was not at issue in Smith's case.
 
 
 47
 Accordingly, we find that Hernandez's testimony related to his personal experiences with discrimination did not have significant probative value. The alleged discrimination against Hernandez did not sufficiently relate to Smith's termination to be probative, but instead occurred under very different circumstances. The danger of unfair prejudice from this testimony, on the other hand, was high because it fed into Plaintiff's indiscriminate effort to introduce evidence of several unrelated incidents of alleged discrimination. Thus, Hernandez's testimony should have been excluded under Rule 403, and the district court abused its discretion by admitting it.[3]
 
 E. O'Neal's Testimony
 
 48
 Plaintiff also called Sheila O'Neal, an African American, to testify about an incident of alleged discrimination in which she was involved.
 
 
 49
 The problems with O'Neal's testimony are obvious. First, O'Neal's testimony contained rank inadmissible hearsay, speculation, and information about which she had no personal knowledge. She herself recognized these deficiencies, calling her own information "hearsay," and admitted she didn't know "exactly what happened." Second, her testimony lacked any significant probative value because the circumstances surrounding the alleged discrimination against her were very different than those in Smith's case. The events involving O'Neal occurred more than a year after Smith's resignation. Her testimony is reflective of sexual harassment at Airborne, and only vaguely reflective--if at all--of racial discrimination. O'Neal ties the sexual harassment to the racial discrimination claim by alleging that when she reported the drivers' conversation to her bosses and to the shop steward, the investigation was conducted differently than when a white woman complained of sexual comments. However, no background was supplied, and O'Neal did not know what the white woman's incident involved or how it was handled. Also, she was very vague about who allegedly made the sexual comments to the other woman: "From what I hear ... it's a conversation between her and a hispanic gentleman. And there was another white guy who was involved." In short, O'Neal did not know any specific details about the other woman's complaint in order to show that the two incidents were similar and that the white woman was treated differently. Thus, there was no significant probative value to her testimony.
 
 
 50
 This is weighed against the highly prejudicial nature of O'Neal's testimony. Her testimony involved claims of sexual harassment against Airborne drivers. This aspect of the testimony undoubtedly had far more impact than O'Neal's inexact testimony about the handling of her complaint as compared to the white woman's. Thus, the limited probative value of this evidence was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," and should have been excluded under Rule 403.[4]
 
 III
 Conclusion
 
 51
 Despite our deferential review, we find this case replete with significant evidentiary errors. As a result of these errors, Smith was able improperly to introduce the testimony of several witnesses concerning unrelated and irrelevant incidents of alleged racial discrimination. The district court itself recognized that some of its evidentiary rulings were "problematic." We agree. Based on the highly damaging nature and amount of the improperly admitted evidence, we conclude that the errors were prejudicial and affected Airborne's substantial rights. Therefore, we find that the district court abused its discretion by denying the motion for a new trial.
 
 
 52
 According, we reverse and remand for further proceedings in accord with this decision.[5]
 
 
 53
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Smith's complaint alleged that: (1) Airborne breached its covenant of good faith and fair dealing and wrongfully discharged Smith; (2) Airborne discriminated against Smith because of his race; (3) Airborne breached the collective bargaining agreement; (4) the Teamsters violated its duty of fair representation; and (5) Airborne and the Teamsters conspired together to deprive Smith of employment, to wrongfully cover other employees' illegal activities, and to discriminate against Smith because of his race
 
 
 [2]
 Hailey testified that Smith was "a very good employee," and that at no time did he question Smith's veracity or think that Smith had committed any thefts. TR. at 260
 
 
 [3]
 We are not persuaded by Smith's argument that this evidence was admissible under Spulak v. K Mart Corp., 894 F.2d 1150 (10th Cir.1990). That case involved claims of constructive discharge and age discrimination. Spulak claimed that he was forced to take an early retirement against his will. During trial, Spulak introduced the testimony of two former employees, also in the protected age group, who testified about the circumstances under which they left their employment with K Mart. One of the witnesses had allegedly been asked if he too would take an early retirement, and then three days later he was fired for insubordination for minor matters. The other witness testified that during the same time period, and a few months before his pension vested, he was fired on invalid grounds. Id. at 1156. The court of appeals found that the district court did not abuse its discretion in allowing this testimony because it was probative of K Mart's discriminatory intent. Id
 Spulak is distinguishable from the instant case. In Spulak the other witnesses testified to the same type of discrimination (i.e., age discrimination), during the same time period, under similar circumstances.
 In contrast, the alleged discrimination against Hernandez was very dissimilar to that involving Smith.
 
 
 [4]
 Again, we are not persuaded by Smith's argument that O'Neal's testimony was proper under Spulak, 894 F.2d at 1150. The witnesses in Spulak testified about similar circumstances of alleged age discrimination involved in their terminations. Here, on the other hand, the circumstances about which O'Neal testified had no similarity whatsoever to the circumstances of Smith's resignation, and her testimony involving racial discrimination was vague and unreliable
 
 
 [5]
 In doing so, we vacate the district court's denial of the JNOV and remand for reconsideration in the light of the evidence that remains admissible in this case