**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 15 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

JERRY W. ANTHONY,

      Plaintiff-Appellant,

v.

CITY OF CLINTON, a municipal
corporation,

      Defendant-Appellee.

No. 98-6188
(W.D. Okla.)
(D.Ct. No. 97-CV-888)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **ANDERSON, BRORBY**, and **MURPHY**, Circuit Judges.

_____

Appellant Jerry W. Anthony appeals the district court's entry of summary

judgment in favor of the City of Clinton on his discrimination claims under the

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* and the Oklahoma

Anti-Discrimination Act, Okla. Stat. tit. 25, § 1101 *et seq.* Mr. Anthony contends

the City of Clinton subjected him to a hostile work environment and

_____

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

constructively discharged him because of a perceived disability. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

The City of Clinton ("the City") hired Mr. Anthony as a police officer in 1990. In 1993, the City assigned Mr. Anthony to the Criminal Investigation Division under the immediate supervision of Lt. Bryan Rizzi. Captain Ken Thiessen and Chief of Police Bill Weedon also supervised Mr. Anthony. During his tenure with the Criminal Investigation Division, Lt. Rizzi counseled Mr. Anthony for various performance deficiencies and at one point formally reprimanded him for entering false information on an official police report. Nonetheless, prior to 1996, Lt. Rizzi rated Mr. Anthony's performance as either "very good" or "satisfactory" on annual reviews. Chief Weedon considered Mr. Anthony to be an "average officer" prior to 1996.

In March 1996, Mr. Anthony admitted himself to a hospital for treatment of depression. Mr. Anthony continued to recuperate and receive therapy for his condition for several weeks after his discharge from the hospital. During his leave of absence, Lt. Rizzi notified Chief Weedon that Mr. Anthony failed to obtain adequate authorization for his leave of absence and to adequately notify the

City of his whereabouts and therefore recommended Mr. Anthony be terminated for abandonment of position. Chief Weedon declined to follow Lt. Rizzi's recommendation and allowed Mr. Anthony to return to work on June 3, 1996, after three physicians certified him fit for service. Upon Mr. Anthony's return to work, Mr. Anthony alleges Lt. Rizzi subjected him to various forms of harassment including heightened supervision, unwarranted criticism of his work, and various incidents of "verbal abuse." At one point, Lt. Rizzi allegedly told Mr. Anthony his illness damaged his reputation and no one wanted to work with him because of his instability and untrustworthiness. Lt. Rizzi also completed Mr. Anthony's annual review and rated his performance as "needs improvement." Both Lt. Rizzi and Chief Weedon admit they believed Mr. Anthony was still suffering from depression after his return to work. Lt. Rizzi further admits he felt depression substantially interfered with Mr. Anthony's ability to be a police officer.

Approximately three weeks after Mr. Anthony's return to work, Ms. Doris Burden, a witness in a case Mr. Anthony had previously investigated, accused Mr. Anthony of tampering with a photographic lineup. [1] Mrs. Burden was scheduled to

---

[1] The City originally assigned Mr. Anthony to investigate Ms. Burden's burglary complaint in the summer of 1995. Lt. Rizzi assumed responsibility for the case during Mr. Anthony's leave of absence.

testify at a preliminary hearing in the case on June 27, 1996.  However, on the morning of the hearing, Ms. Burden informed two assistant district attorneys she feared testifying because she could not identify the suspect.  When asked about her prior positive identification at a photo lineup conducted by Mr. Anthony in 1995, Mr. Burden said she had initially been unable to identify the suspect in the photo lineup and that Mr. Anthony became angry with her for "blowing the case" and then pointed out the correct picture to her.    [2]   The District Attorney's office informed Chief Weedon and Lt. Rizzi that Mr. Anthony might be charged with subornation of perjury and recommended a full investigation.  District Attorney Richard Drugger also made it clear Mr. Anthony no longer had any credibility in the district attorney's office.

On July 1, 1996, Chief Weedon, Captain Thiessen and Lt. Rizzi met with Mr. Anthony to discuss the situation.  Chief Weedon informed Mr. Anthony of the accusations and the possibility of subornation of perjury charges.  The Chief presented Mr. Anthony with two options:  resign, or face an internal investigation.  Mr. Anthony took that afternoon and evening to consider his options.  He sought

---

[2] Ms. Burden signed a statement recounting her version of the photo lineup.  Ms. Karen Miller, also a participant in the photo lineup, told an investigator from the District Attorney's office that Ms. Burden related the same version of events to her immediately after the lineup.

the advice of his family, a physician, an attorney, and a local judge. The next morning, Mr. Anthony met with Chief Weedon and signed a resignation letter. Chief Weedon admits he advised Mr. Anthony that, regardless of the possible perjury charges and internal investigation, he should resign for his own personal health since he had not completely recovered from the depression.

Mr. Anthony filed suit, arguing the City created a hostile work environment and constructively discharged him by offering a "Hobson's choice" between resigning or facing an internal investigation because of his perceived disability of depression. The district court granted the City's motion for summary judgment, concluding Mr. Anthony failed to present sufficient evidence showing the City's conduct amounted to a constructive discharge or that he resigned because of alleged harassment. The court dismissed Mr. Anthony's state law claim for the same reasons. On appeal, Mr. Anthony argues: (1) he presented sufficient factual disputes concerning his claims of constructive discharge and hostile work environment to survive summary judgment, and (2) the district court erred in refusing to allow him to amend his Complaint to include a claim for punitive damages under the Oklahoma Anti-Discrimination Act and in finding the City immune from any punitive damage claims.

We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). We "examine the record to determine if any genuine issue of material fact was in dispute; if not, we determine if the substantive law was correctly applied." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). In applying this standard, we view the factual record and inferences therefrom in the light most favorable to the nonmoving party. *Tomsic v. State Farm Mut. Auto, Ins. Co.*, 85 F.3d 1472, 1476 (10th Cir. 1996). However, to survive summary judgment, the nonmoving party may not rest upon the allegations or denials of his pleadings, but must set forth specific facts through admissible evidence showing there is a genuine issue for trial. *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1490 (10th Cir. 1995). Summary judgment is appropriate "[i]f a reasonable trier of fact could not return a verdict for the nonmoving party." *White*, 45 F.3d at 360.

## II. Discussion

The Americans with Disabilities Act provides "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training,

-6-

and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a claim under the Americans with Disabilities Act, Mr. Anthony must establish: (1) he is a disabled person within the meaning of the Americans with Disabilities Act; (2) he is qualified, that is, able to perform the essential functions of the job with or without reasonable accommodation; and (3) his employer discriminated against him in its employment decision because of his alleged disability. *Pack v. Kmart Corp.*, 166 F.3d 1300, 1304 (10th Cir. 1999), *petition for cert. filed*, (U.S. May 5, 1999) (No. 98-1784). The district court declined to address the first two elements, deciding instead to base its decision solely on Mr. Anthony's failure to meet the third element. [3] Accordingly, for purposes of this appeal, we assume Mr. Anthony established the first two elements of his claim and focus our analysis on the third element – whether Mr. Anthony demonstrated that there is a genuine issue of material fact as to whether the City created a hostile work environment or constructively discharged him because of his perceived disability.

A. Hostile Work Environment

Mr. Anthony contends the district court erred in failing to fully consider his

---

[3] We note Mr. Anthony does not claim he is actually disabled under the American with Disabilities Act. Instead, he argues the City regarded him as disabled by mental illness.

hostile work environment claim. In its Order, the district court reviewed Mr. Anthony's allegations of harassment and intolerable working conditions, but only in the context of a constructive discharge claim. The court did not specifically apply the elements of a hostile work environment claim to Mr. Anthony's evidence. Nonetheless, we exercise our discretion to review the claim because it can be resolved on the basis of undisputed facts and for substantially the same reasons applicable to Mr. Anthony's constructive discharge claim. *See Sanchez v Denver Publ. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998).

The Tenth Circuit has not previously recognized a hostile work environment claim under the Americans with Disabilities Act. Other circuits have acknowledged such a claim only for the sake of argument. *See Walton v. Mental Health Ass'n*, 168 F.3d 661, 666-67 (3d Cir. 1999); *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998); *Wallin v. Minnesota Dep't of Corrections*, 153 F.3d 681, 687-88 (8th Cir. 1998), *cert. denied*, 119 S. Ct. 1141 (1999); *see also Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir.) (implicitly recognizing ADA hostile work environment claim in affirming summary judgment for employer), *cert. denied*, 119 S. Ct. 407 (1998). Because we do not believe this is the appropriate case to make such a determination, we follow our sister circuits in assuming without deciding that such a cause of action

exists and the elements would be similar to those required under Title VII. *See, e.g., Walton*, 1999 WL 86818 at *3 (utilizing Title VII elements based on similarities between Title VII and the ADA). Based on this assumption, to survive summary judgment, Mr. Anthony must show "that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Penry v. Federal Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998) (discussing elements of a Title VII sexual harassment claim based on a hostile work environment theory) (quotation marks and citation omitted), *cert. denied*, 119 S. Ct. 1334 (1999). Mr. Anthony must also produce evidence that he was the object of discrimination because of his perceived disability. *Id.* The conduct must be both objectively and subjectively abusive. *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1071 (10th Cir. 1998). Factors a court may consider include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 23 (1993).

Mr. Anthony has failed to meet this standard. As the district court noted,

much of the evidence presented by Mr. Anthony amounts to conclusory allegations that Lt. Rizzi "verbally assaulted" or "verbally harassed" him. Such allegations are insufficient to raise a genuine issue of material fact. The remaining specific incidents alleged by Mr. Anthony are not pervasive or severe enough to amount to a hostile work environment. The alleged incidents occurred over a short time period – approximately two weeks after subtracting Lt. Rizzi's vacation. Moreover, the record contains little evidence that a jury could construe as disability-based slurs or ridicule. *See Trujillo v. University of Colorado*, 157 F.3d 1211, 1214 (10th Cir. 1998) (affirming summary judgment for employer on Title VII hostile work environment claim where plaintiff presented no evidence of racial comments or ridicule). None of the incidents appear physically threatening or humiliating. *Harris*, 510 U.S. at 23. While the evidence does show tension existed between Lt. Rizzi and Mr. Anthony, such unpleasantries in the workplace do not amount to a hostile work environment. *Trujillo*, 157 F.3d at 1214 ("Normal job stress does not constitute a hostile or abusive work environment."); *Penry*, 155 F.3d at 1263 (affirming summary judgment of employee's hostile work environment claim where workplace was unpleasant but not "permeated with discriminatory intimidation"). We therefore affirm summary judgment of Mr. Anthony's hostile work environment claim.

B.  Constructive Discharge

Mr. Anthony's second claim is that the City constructively discharged him because of his perceived disability.  On appeal, Mr. Anthony argues the district court erred by (1) applying the wrong analytical framework in considering his evidence, and (2) concluding he failed to establish constructive discharge.  (*Id.* at 24-30.)  As to the first issue, we conclude the district court correctly applied the *McDonnell Douglas* burden-shifting analysis to the facts of this case.  As with any employment discrimination case, Mr. Anthony may establish that his employer discharged him in violation of the Americans with Disabilities Act by direct or circumstantial evidence.  *See Equal Employment Opportunity Comm'n v. WilTel, Inc.*, 81 F.3d 1508, 1513-14 (10th Cir. 1996).  If he relies on circumstantial evidence, the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) applies.  *See Morgan v. Hilti*, 108 F.3d 1319, 1323 & n.3 (10th Cir. 1997) (applying *McDonnell Douglas* in the ADA context).  If, however, Mr. Anthony presents direct evidence that discriminatory animus played a motivating part in an employment decision, *McDonnell Douglas* is inapplicable and the City may avoid liability "'only by proving by a preponderance of the evidence that it would have made the same decision' even in the absence of the discriminatory reason."  *WilTel*, 81 F.3d at 1514 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989)).  This

-11-

method of proof is often referred to as a "mixed motive" analysis.

Direct evidence of discrimination is evidence of "an existing policy which itself constitutes discrimination" or, in other words, evidence that the employer acted on his discriminatory beliefs in making the adverse employment decision. *Ramsey v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990), *cert. denied*, 506 U.S. 907 (1992). Statements that are merely expressions of personal opinion do not constitute direct evidence. *WilTel*, 81 F.3d at 1514. Mr. Anthony points to deposition testimony by Lt. Rizzi, Captain Thiessen, and Chief Weedon as direct evidence of the City's discriminatory motive. However, the vast majority of these statements are personal opinions regarding Mr. Anthony's mental health and competency as a police officer – they do not show that any of Mr. Anthony's supervisors *acted on* those opinions. Because such statements would require a jury to infer a discriminatory motive, they are at most circumstantial evidence of discriminatory intent. *Id.*

We find only one statement by Chief Weedon that could conceivably be construed as direct evidence. [4] In a "Memo for Personnel File" Chief Weedon

---

[4] In his brief, Mr. Anthony also relies on an alleged conversation between an Oklahoma Employment Security Commission officer and Chief Weedon in which Chief Weedon told the Commission officer that the real reason he offered Mr. Anthony a choice

-12-

summarized his meetings with Mr. Anthony on July 1 and 2, 1996:

> This meeting was called as a result of Sgt. Anthony's investigation of a case and his filing an Affidavit of Probable Cause....  The District Attorney's office wanted to file subordination [sic] of perjury against Sgt. Anthony.  During this meeting Sgt. Anthony was advised of these charges and his work performance before and since he had returned from sick leave.  (Severe depression and anxiety arising from his wife leaving him.)
>
> Sgt. Anthony was advised by me that he could do one of two things.  (1), Go before a Review Board to look at all the allegations and also his work performance or (2), He could resign from the police department....
>
> ...
>
> Sgt. Anthony returned to my office and after discussing the situation, he asked me for my advise [sic].  I advised him regardless of the perjury charges and being taken before the Police Review Board, my advise [sic] to him was for his personal health, he still was not completely recovered from the severe depression.  I told him

---

between resigning and facing an investigation was Mr. Anthony's poor work performance.  Mr. Anthony claims the Commission officer recorded the conversation in his case file.  However, Mr. Anthony failed to provide us any reliable evidence of the alleged conversation, such as a deposition transcript or a sworn affidavit by the Commission officer.  *See* Fed. R. Civ. P. 56 (requiring testimony supporting or opposing summary judgment to be based on personal knowledge and in the form of a sworn affidavit).  Mr. Anthony's rendition of the alleged conversation in his briefs amounts to a "'generalized, unsubstantiated, non-personal affidavit[],'" and we will not consider it on summary judgment.  *Thomas v. International Bus. Mach.*, 48 F.3d 478, 485 (10th Cir. 1995) (quoting *Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir. 1975)); *see also Jeffries v. Kansas*, 147 F.3d 1220, 1224 n.1 (10th Cir. 1998) (refusing to consider witness statements where plaintiff failed to present evidence of the witness' testimony in the form of a deposition or sworn affidavit); *Hayes v. Marriott*, 70 F.3d 1144, 1147-48 (10th Cir. 1995) (refusing to grant summary judgment on the basis of a report containing unsworn statements and lacking sworn affidavits based on personal knowledge of the relevant events).

he needed to get out of law enforcement for awhile and get away from the stress. I did not think he would ever get any better if he did not.

We conclude Chief Weedon's memo is not direct evidence of a discriminatory motive. Although the statement refers to Mr. Anthony's sick leave for "severe depression and anxiety" and Chief Weedon's personal opinion regarding Mr. Anthony's mental health, it does not state Chief Weedon took an employment action because of the depression. Such a conclusion requires an inference by the factfinder and, therefore, the memo is at best circumstantial evidence.

Accordingly, we turn to the *McDonnell Douglas* framework applicable to cases relying on circumstantial evidence of discrimination. *See Morgan*, 108 F.3d at 1323 n.3 ("The McDonnell Douglas burden-shifting analysis is appropriate in disability discrimination cases ... in which the plaintiff has no direct evidence of discrimination and the employer disclaims reliance on the plaintiff's disability for an employment decision."). The first step of the *McDonnell Douglas* burden-shifting analysis places the burden on Mr. Anthony to establish a *prima face* case of discrimination. In the context of a disability discrimination claim, Mr. Anthony must show: (1) he is disabled according to the Americans with Disabilities Act; (2) he is qualified, *i.e.*, able to perform the essential functions of

-14-

the job with or without accommodation; and (3) the employer (constructively) discharged him under circumstances giving rise to an inference that the termination was based on his disability. *Morgan*, 108 F.3d at 1323. If he establishes a *prima facie* case, the burden shifts to the City to offer a legitimate, nondiscriminatory reason for the adverse employment action. The burden then reverts to Mr. Anthony to show "that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). In this case, the district court concluded Mr. Anthony failed to establish the third prong of his *prima face* case because he failed to present sufficient evidence that the City constructively discharged him. We agree.

To prove constructive discharge, a plaintiff must allege sufficient facts to demonstrate "'the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.'" *Sanchez*, 164 F.3d at 534 (quoting *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986)). A slight variation of this standard allows a plaintiff to prove constructive discharge by showing the employer, through its discriminatory acts, forced the employee to choose between resigning or being fired. *See Burks v. Oklahoma Publ'g Co.*, 81 F.3d 975, 978 (10th Cir.),

*cert. denied*, 519 U.S. 931 (1996); *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1154 (10th Cir. 1990). Of course, not every hard choice presented to an employee amounts to constructive discharge. It is only when a reasonable person in the employee's position would feel forced into resigning through the imposition of "unreasonably harsh conditions that have been applied to him in a discriminatory fashion." *Spulak*, 894 F.2d at 1154.

Mr. Anthony argues a reasonable person in his position, considering the totality of the circumstances, would feel compelled to resign because his only other option was to be "professionally ruined" by a "questionable" investigation conducted by supervisors who viewed him as mentally disabled. Specifically, Mr. Anthony contends we should consider his choice in the context of the alleged harassment and verbal abuse by Lt. Rizzi, his supervisors' views of his mental health and fitness for duty, and the fact that his supervisors would play key roles in the internal investigation. However, after reviewing the record as a whole and considering the totality of the circumstances, we conclude that while Mr. Anthony undeniably faced an unpleasant and difficult choice, there is insufficient evidence of a situation amounting to "unduly harsh and discriminatory treatment" that would compel a reasonable person to resign. *Spulak*, 894 F.2d at 1154.

The City had valid reasons for invoking its investigatory process, namely, allegations of serious misconduct combined with possible subornation of perjury charges and the District Attorney's expressed lack of confidence in Mr. Anthony's credibility. Despite Mr. Anthony's arguments to the contrary, we find no evidence indicating the allegations against him were tainted or the threat of subornation charges illegitimate. [5] Moreover, Mr. Anthony admits Mrs. Burden's allegations, if true, warrant serious disciplinary action. Thus, the City's investigation into such allegations cannot be seen as unreasonable and, like the district court, we refuse to adopt an interpretation of the Americans with

_____

[5] Ms. Burden signed a written statement recounting her version of the photo lineup. Ms. Karen Miller, also a participant in the photo lineup, corroborated Ms. Burden's statement. Nonetheless, Mr. Anthony questions the credibility of Ms. Burden's allegations based on supposed "inconsistencies" in her statements. However, the only "inconsistency" Mr. Anthony points to is that Ms. Burden originally signed a positive identification of the suspect in 1995 and in 1996 signed a statement indicating she could not identify the suspect. We fail to see how Ms. Burden's inability to identify the suspect in 1996 undercuts the truthfulness of her explanation for that inability, namely Mr. Anthony's alleged tampering. *See United States v. Simons,* 129 F.3d 1386, 1388 (10th Cir. 1997) (stating irrelevant factual disputes will not defeat summary judgment). Likewise, the mere fact that Lt. Rizzi wrote out Ms. Burden's 1996 statement fails to create an issue of material fact regarding the allegations, especially considering that Ms. Breeden reviewed and signed the statement. *Id.*; *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993) (stating summary judgment may be granted if the evidence presented by the nonmovant is not significantly probative). Mr. Anthony also questions the legitimacy of the threatened subornation charges by arguing Chief Weedon failed to perform an adequate investigation. This argument defies common sense. Mr. Anthony cannot question the legitimacy of the proposed investigation by arguing the City failed to perform an investigation.

Disabilities Act which would require an employer to ignore those types of allegations merely because the employee involved is perceived as disabled, especially where the same type of conduct would not be tolerated in non-disabled employees.

More important, the investigation was just that – an investigation. The final disciplinary action, if any, remains unknown. Mr. Anthony admits the investigation was only the first step in the police department's established procedure and that a review board consisting of five officers would ultimately review the results and allow Mr. Anthony the opportunity to present evidence, call witnesses, and make a statement on his behalf. Only after completion of this process would Chief Weedon make a final decision based on the review board's recommendation. Mr. Anthony's speculation that he would be "professionally ruined" does not alter this conclusion. *See Simons*, 129 F.3d at 1388 (stating conclusory allegations made by the non-movant are insufficient to defeat summary judgment). We also find little significance in Chief Weedon's statement that a review board would evaluate Mr. Anthony's performance both before and after his leave of absence. The Americans with Disabilities Act prohibits employers from discriminating against employees who are otherwise qualified to perform the job. 42 U.S.C. § 12112(a). It does not prevent an employer from

-18-

evaluating an employee's performance. Moreover, a review board could legitimately inquire into Mr. Anthony's fitness to perform the essential functions of his job. *See* 42 U.S.C. § 12112(d)(4)(A); *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997) ("The ADA explicitly prohibits employers from making disability-related inquiries of employees, *unless* the inquiry is job-related or consistent with business necessity." (Emphasis added.))

The circumstances surrounding the investigation also fail to establish a situation so harsh and discriminatory that it would compel a reasonable person to resign. Mr. Anthony's working conditions, including the alleged harassment by Lt. Rizzi, do not amount to a hostile work environment. Likewise, those same circumstances are not serious enough to somehow transform an otherwise legitimate investigation into an intolerable option no reasonable person would pursue, even assuming Lt. Rizzi would have played some role in the investigation. *See Sanchez*, 164 F.3d at 534 (affirming dismissal of plaintiff's constructive discharge claims where conditions of employment did not amount to a hostile work environment); *Bolden v. PRC Inc.*, 43 F.3d 545, 552 (10th Cir. 1994) (same), *cert. denied*, 516 U.S. 826 (1995); *see also Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990) ("Referring a disgruntled employee to an internal

grievance process could never constitute the intolerable work conditions necessary to establish constructive discharge."). Similarly, Chief Weedon's role in the disciplinary process and his personal recommendation that Mr. Anthony quit do not establish conditions so desperate or oppressive that a reasonable person would be compelled to resign. We also note that, while Mr. Anthony argues the City coerced his choice, the evidence shows he considered his options overnight and obtained the advice of his family, a physician, a judge and an attorney before tendering his resignation. *Cf. Arnold v. McClain*, 926 F.2d 963, 966-67 (10th Cir. 1991) (finding no constructive discharge in a §1983 claim where plaintiff police officer chose to resign rather than face criminal perjury charges after considering his options for several hours and consulting with his spouse and an attorney).

Thus, even viewing the factual record and inferences therein in the light most favorable to Mr. Anthony, we find his allegations of constructive discharge insufficient to raise a genuine issue of material fact. Accordingly, we conclude Mr. Anthony fails to establish a *prima facie* case of discrimination under the Americans with Disabilities Act. Mr. Anthony's claim under the Oklahoma Anti-

Discrimination Act fails for essentially the same reason. [6] We therefore **AFFIRM** the district court's order granting summary judgment in favor of the City of Clinton on all of Mr. Anthony's claims.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

---

[6] Similar to the Americans with Disabilities Act, the Oklahoma Anti-Discrimination Act makes it unlawful to "fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of ... handicap." Okla. Stat. tit. 25, § 1302(A)(1). Because Mr. Anthony presents insufficient evidence that the City constructively discharged him or created a hostile work environment, the City is entitled to summary judgment on this claim. Accordingly, we need not address his arguments regarding punitive damages under the Oklahoma Anti-Discrimination Act. *See Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir.) ("We will not undertake to decide issues that do not affect the outcome of a dispute."), *cert. denied*, 502 U.S. 878 (1991).