57 F.3d 1080
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Patricia A. HOWARD, Plaintiff-Appellant,
v.
BEECH AIRCRAFT CORPORATION, Defendant-Appellee.
 No. 94-3259.
(D.C. No. 92-CV-1649)
 United States Court of Appeals, Tenth Circuit.
 June 14, 1995.
 
 1
 Before MOORE and LOGAN, Circuit Judges, and COOK, District Judge.[2]
 
 
 2
 Patricia C. Howard appeals the district court's grant of summary judgment to Beech Aircraft Corporation on a variety of claims arising from her prior employment at Beech. We affirm because we find no error committed by the district court.
 
 
 3
 The parties are quite familiar with the facts of this case, so we only briefly summarize them here. Ms. Howard is a 67-year-old woman of Hispanic ancestry. Her employment at Beech began in 1966. In 1986, Ms. Howard was assigned to the job of sheetmetal parts inspector. On September 11, 1991, Ms. Howard was terminated for failing to properly record her inspection results on the requisite company forms. After Ms. Howard rejoined her union and filed a grievance, she and the company settled their dispute agreeing to convert the termination into a suspension without pay. Ms. Howard was reinstated on September 26, 1991, pursuant to the agreement.
 
 
 4
 The day she was reinstated, Ms. Howard filed a complaint with the Kansas Human Rights Commission (KHRC), alleging age, sex, and ancestry discrimination, and that Beech retaliated against her for opposition to unlawful acts. The discriminatory incidents in question allegedly occurred between September 1990 and September 1991. Ms. Howard's KHRC complaint was forwarded to the Equal Employment Opportunity Commission (EEOC) for administrative review. On January 10, 1992, Ms. Howard filed a second complaint with the KHRC, essentially repeating her earlier allegations, but this time alleging the discriminatory acts had continued until January 3, 1992. It is not clear from the record whether this complaint was also forwarded to the EEOC.
 
 
 5
 On March 30, 1992, Ms. Howard announced it was her final day of work. At the end of the day, she left her tool drawer locked. Inside the drawer, Ms. Howard had left a drawing of a fist with the middle finger extended, with a written caption reading, "This time I left My Way."
 
 
 6
 The EEOC issued a right to sue letter on September 30, 1992. The letter concluded Ms. Howard had failed to present sufficient evidence of age, sex, or national origin discrimination, or that she was improperly retaliated against for complaining to her supervisors.[3]
 
 
 7
 Ms. Howard filed a complaint in federal court on December 29, 1992. The district court granted summary judgment for Beech on the merits of all of Ms. Howard's claims.[4] The court also denied Ms. Howard's Fed.R.Civ.P. 59(e) motion to alter and amend the judgment.
 
 
 8
 On appeal, Ms. Howard raises three issues. First, she argues the court misapplied the standard for summary judgment. Second, Ms. Howard asserts the court should not have granted summary judgment on the merits of her sex, ancestry, and age discrimination claims and her retaliation and constructive discharge claims. Third, Ms. Howard contends the court erred by failing to grant her motion to alter and amend the judgment.
 
 
 9
 We review dispositions by summary judgment de novo, applying Fed.R.Civ.P. 56, the applicable standard, in identical fashion as the district court. Ershick v. United Missouri Bank of Kansas City, N.A., 948 F.2d 660, 670 (10th Cir.1991). The evidence is examined in the light most favorable to the non-movant. McKenzie v. Mercy Hosp. of Independence, Kan., 854 F.2d 365, 367 (10th Cir.1988). Summary judgment is appropriate only if there is no genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).
 
 
 10
 First, Ms. Howard asserts the court failed to examine the evidence in a light most favorable to her and improperly made witness credibility determinations in resolving the motion. We conclude the district court correctly stated the summary judgment standard and Ms. Howard fails to identify any improper credibility determinations or evidentiary inferences or conclusions.
 
 
 11
 Second, Ms. Howard argues the district court improperly granted summary judgment on the merits of her sexual harassment claim. Ms. Howard alleges she suffered sexual harassment because she was subject to a hostile work environment. In Harris v. Forklift Systems, Inc., 114 S.Ct. 367 (1993), the Court recently restated the appropriate standard.
 
 
 12
 When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Title VII is violated.
 
 
 13
 Id. at 370 (quoting Meritor Savings Bank v. Vinson, 477 U.S. 57, 65, 67 (1986)) (citations omitted). The Court deliberately chose a "middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." Id. The Court noted, "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview." Id.
 
 
 14
 As evidence of her claim, Ms. Howard cites several incidents and comments made by one of her supervisors. First, Ms. Howard alleges Jerry Yeager, an Assistant Foreman, frequently commented that she had "Martha Lattamore syndrome." Ms. Howard interpreted Mr. Yeager's statements as comments about the size of her breasts, and an insinuation she would hurt her back when she bent over. Second, on one occasion, Mr. Yeager stated the smartest woman at Beech was not as smart as the dumbest man. Third, Mr. Yeager once pretended to wipe his dirty hands on Ms. Howard's clean blouse.
 
 
 15
 The district court concluded, "under the totality of circumstances presented, the court cannot find that the plaintiff was subjected to a pervasively hostile work environment." We agree with the district court's analysis. Taken in their entirety, Ms. Howard's allegations do not give rise to a hostile work environment as judged by the reasonable person standard. Compare Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410 (10th Cir.1993); Hicks v. Gates Rubber Co., 833 F.2d 1406 (10th Cir.1987), appeal after remand, 928 F.2d 966 (10th Cir.1991). The events Ms. Howard describes are not overtly sexual enough, nor frequent enough, to support her sexual harassment claim.
 
 
 16
 Third, Ms. Howard argues the district court improperly granted summary judgment on her ancestry discrimination claim. The Court established the framework for Title VII disparate treatment lawsuits in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981). Ms. Howard must establish her prima facie case by demonstrating: (1) she was within a protected class or minority; (2) she was doing satisfactory work; (3) she was discharged; and (4) her position remained open or was filled by a non-class member. Murray v. City of Sapulpa, 45 F.3d 1417, 1420 (10th Cir.1995).
 
 
 17
 The gravamen of Ms. Howard's disparate treatment based on ancestry claim is Mr. Yeager's comment that he thought Ms. Howard could pass for white, and that nobody would necessarily know she was of Hispanic ancestry unless she told them. Mr. Yeager never repeated a similar remark after Ms. Howard informed him she found his comment offensive. Ms. Howard offers no additional evidence of anyone at Beech negatively commenting on her ancestry.
 
 
 18
 The district court held Ms. Howard had failed to establish the second prong of her prima facie case--that she was doing satisfactory work. Ms. Howard argues her long-standing tenure demonstrates her satisfactory job performance. She relies upon Denison v. Swaco Geolograph Co., 941 F.2d 1416 (10th Cir.1991), where this court noted a plaintiff need not prove her job performance was flawless, but must only demonstrate her "performance was of sufficient quality to merit continued employment, thereby raising the inference that some other factor was involved in the decision to discharge" her. Id. at 1421 (quoting Powell v. Syracuse Univ., 580 F.2d 1150, 1155 (2d Cir.), cert. denied, 439 U.S. 984 (1978)). We believe there is sufficient evidence in the record to support the district court's conclusion. Initially, Ms. Howard was fired for her failure to properly record the results of her inspections. Her error rate of 26% was higher than all the other parts inspectors, whose error rates ranged from 1% to 19%. Further, Ms. Howard had been disciplined on at least five occasions since 1987. Faced with Ms. Howard's work history, we believe the district court correctly concluded she failed to carry her burden of proving satisfactory job performance. Ms. Howard's work record does not support the inference that her discharge resulted from discriminatory treatment.
 
 
 19
 An additional rationale exists in support of the district court's grant of summary judgment on this claim. Mr. Yeager's comment, without more, is not enough to establish a disparate treatment discrimination claim. As we noted in Pitre v. Western Elec. Co., 843 F.2d 1262 (10th Cir.1988), disparate treatment requires more than an isolated incident of discrimination.
 
 
 20
 In order to prove a pattern or practice of discrimination, a plaintiff must show more than accidental or sporadic incidents of discrimination; she must show that "discrimination was the company's standard operating procedure--the regular rather than the unusual practice."
 
 
 21
 Id. at 1267 (quoting International Bhd. of Teamsters v. United States, 431 U.S. 324, 336 and n. 16 (1977)). We do not condone Mr. Yeager's comment about Ms. Howard's ancestry. Indeed, in an ideal world, every workplace should be free of all racially-tinged discourse. However, Mr. Yeager's comment is properly characterized as an isolated or sporadic incident of discrimination, not the standard operating procedure of the corporation as a whole.
 
 
 22
 Fourth, Ms. Howard argues the district court erred by granting summary judgment for Beech on her age discrimination claim. We apply the standards developed in the Title VII context, outlined above, to Age Discrimination in Employment Act cases. EEOC v. Sperry Corp., 852 F.2d 503, 507 (10th Cir.1988); Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1547 (10th Cir.1988). Again, the district court held Ms. Howard had failed to establish she performed her job in a satisfactory manner.
 
 
 23
 Ms. Howard cites two allegedly material facts in controversy on this issue that would prevent summary judgment. First, she argues Mr. Yeager told her not to enter her inspection results on the requisite form on an almost nightly basis, but to place them on her work sheets. Second, Ms. Howard asserts Nina Long, the Manager of Personnel Relations and Systems, who investigated the inspection form errors testified in her deposition that no company standards existed in this area, and no one had previously been terminated from Beech for this reason. The problem with these two facts is that even if they are true, they do not necessarily support the conclusion Ms. Howard performed her job satisfactorily. For example, she could have performed her job unsatisfactorily even if she followed Mr. Yeager's directions. Ms. Howard's reliance on these two additional facts does not undermine the district court's conclusion she failed to establish the second element of her prima facie case.
 
 
 24
 Fifth, Ms. Howard contends the court erred in granting summary judgment on the merits of her retaliation claim. To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer subsequent to the protected activity; and (3) a causal connection between the employee's activity and the adverse action. Archuleta v. Colorado Dept. of Insts., 936 F.2d 483, 486 (10th Cir.1991); Allen v. Denver Public Sch. Bd., 928 F.2d 978, 985 (10th Cir.1991) (per curiam).
 
 
 25
 Ms. Howard offers the following evidence to support her allegations of retaliation. First, in November of 1980, she was assigned to the "tag and drag" work in the department, an assignment she enjoyed. While Ms. Howard was on sick leave for several weeks, these duties were reassigned to another worker. Ms. Howard contends this reassignment was in retaliation for a complaint she lodged against a coworker. Second, Ms. Howard believes her September 1991 termination occurred because of a series of phone calls she made to Bill Wise, the Vice President of Quality Assurance.
 
 
 26
 The district court concluded Ms. Howard failed to establish the third element of her prima facie case. "The determination of what motivates an employer's conduct is both sensitive and difficult,' and is treated as a pure question of fact subject to Rule 52(a)'s clearly erroneous standard." Archuleta, 936 F.2d at 487 (quoting Pitre, 843 F.2d at 1266). We do not believe the district court's finding was clearly erroneous. Ms. Howard has failed to offer any evidence of a causal connection between her alleged protected activities and her termination. Ms. Howard's 1980 job reassignment is too remote in time to have any bearing on an employment decision made eleven years later. Similarly, Ms. Howard has failed to present evidence linking her repeated telephone calls to Mr. Wise's office with the termination decision. She has not even offered evidence that those responsible for her termination were even aware of her telephone calls. Ms. Howard has simply inferred a connection between these two events because one occurred prior to the other. Her inference is not supported by the record.
 
 
 27
 Sixth, Ms. Howard appeals the district court's summary judgment disposition of her constructive discharge claim. We have adopted the following standard for determining when a constructive discharge has occurred:
 
 
 28
 "[P]roof of constructive discharge depends upon whether a reasonable [person] would view the working conditions as intolerable." ... In other words, "the question on which constructive discharge cases turn is simply whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign."
 
 
 29
 Spulak v. K Mart Corp., 894 F.2d 1150, 1154 (10th Cir.1990) (quoting Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir.1986)) (citations and some internal quotation marks omitted). The district court reached two conclusions on this claim. First, the court held the evidence did not support the conclusion the working conditions at Beech became so difficult Ms. Howard could not remain. Second, the court concluded Ms. Howard left voluntarily based on her deposition testimony and the message she left in her locked tool drawer. These findings were not clear error.
 
 
 30
 Finally, Ms. Howard argues the district court erred by not altering or amending its judgment pursuant to Fed.R.Civ.P. 59(e). The court denied Ms. Howard's motion on the grounds she failed to "raise any new matters not previously presented to, and considered by, the court in resolving the defendants' summary judgment motion." We review for an abuse of discretion. Webber v. Mefford, 43 F.3d 1340, 1345 (10th Cir.1994); Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1523 (10th Cir.1992). Given our conclusions above, we conclude the court did not abuse its discretion in denying her Rule 59(e) motion.
 
 
 31
 AFFIRMED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable H. Dale Cook, Senior Judge for the United States District Court for the Northern District of Oklahoma, sitting by designation
 
 
 [3]
 Ms. Howard frames her national origin discrimination claim as one of ancestry discrimination. We employ her terminology throughout this order and judgment
 
 
 [4]
 Alternatively, the court also held Ms. Howard's claims of sexual harassment and constructive discharge were never subject to administrative review so the court was barred from considering them. Because of our disposition of this case on the merits, we do not address the district court's alternate holding that Ms. Howard failed to exhaust her administrative remedies on two of her claims