Hung Duc BUI, Plaintiff,

v.

IBP, INC., Defendant.

No. 98–4020–SAC.

United States District Court,
D. Kansas.

Feb. 7, 2001.

David O. Alegria, McCullough, Wareheim & LaBunker, P.A., Topeka, KS, for Plaintiff.

Mark D. Hinderks, Stinson, Mag & Fizzell, P.C., Leawood, KS, Kathy Perkins Brooks, Stinson, Mag & Fizzell, P.C., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This case comes before the court on defendant IBP, Inc.'s motion for summary judgment. Plaintiff alleges that the termination of his employment was motivated by national origin or race or ancestry discrimination [1] in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and/or was based upon age discrimination in violation of the ADEA, 29 U.S.C. § 621, *et seq.* Plaintiff additionally brings a state law claim of retaliatory termination, invoking this court's supplemental jurisdiction. (Dk.88, p. 1–2).

## UNDISPUTED FACTS

The vast majority of facts relevant to this motion [2] are undisputed. Plaintiff was

---

**1.** The Pretrial Order (Dk.88, p. 6, 9, 11) inconsistently refers to plaintiff's claim by each of these references. Plaintiff's Kansas Human Rights Commission charge alleges only national origin (and age) discrimination. (Dk. 71, last attachment) In his summary judgment brief, the plaintiff generically refers to this claim as a "discrimination" claim (Dk.67, p. 30–32), and defendant alternatively refers to it as an ancestry claim (Dk.60, p. 1, 10), and as a race discrimination claim (Dk.71, p. 1, 13–15, 18). Although the distinction between these claims may be important in some cases, the parties' failure to specify the nature of this claim, although extremely unusual, does not preclude the court's ruling herein. For convenience, the court will address this as plaintiff's ancestry discrimination claim.

**2.** Some facts included herein are set forth for background purposes, and are not relevant to the issues at hand. Other uncontested facts are established by the record, but are not included in this recitation because they are immaterial in light of the court's disposition herein of plaintiff's retaliatory discharge claim.

born in Vietnam and moved to the United States in 1993. His first job in the United States was with the defendant, beginning in March of 1994. Plaintiff was classified as a "no jobber," meaning that he was assigned to no particular position. One of his two primary tasks was to package beef kidneys in a box. His shift began at 3:10 p.m. and ended at 11:40 p.m., although his supervisor expected him to continue working thereafter until his work was completed and no more kidneys remained in his area to be boxed. Plaintiff occasionally worked past 11:40 p.m. to finish the work, but did not believe that he was paid overtime for his work.

On January 30, 1997, plaintiff states that he left his work station at 11:41 p.m. Plaintiff's supervisor of eleven months, Mr. Myrick, states that he noticed plaintiff's absence, that about seven minutes remained on plaintiff's shift and that more product remained in his area to be processed. Myrick then looked for plaintiff and found him in the clean up area. Myrick informed plaintiff that he needed to return to work to finish his job. Plaintiff refused to do so.

The parties dispute important details of what Myrick informed plaintiff, and what plaintiff replied, at times in English and at times through co-employee Tuyen Nguyen, who served as an interpreter. Defendant acknowledges a language barrier between plaintiff and Myrick, and further acknowledges that the interpreter used on the 30th for Myrick's conversation with plaintiff was not fluent in English.

Defendant alleges that Myrick told plaintiff that if he walked off the job he could be terminated, to which plaintiff replied that his eight hours were done, that he was very tired, that he was going home, and that he had not been authorized to work overtime. According to defendant, plaintiff made no mention of injured fingers, a sore back, or any other medical problems at that time.

Plaintiff counters that he told Myrick, among other matters, that his eight hours were up, that he was tired, and that he could not work overtime because of his back and finger injuries. Plaintiff alleges and defendant disputes that plaintiff then also showed Myrick his bleeding fingers. Plaintiff further alleges that he had complained to Myrick many times of his back problems, but Myrick alleges that plaintiff never did so. Plaintiff became angry and loud when he realized that Myrick wanted him to turn in his identification card and that he was suspended from work. (Dk. 60, Bui depo. p. 39.)

Plaintiff went home, and did not seek medical attention at defendant's health service department. The next morning, plaintiff saw a Vietnamese physician, then returned to his place of employment where he submitted papers from the physician to defendant's nurse. Later that same day, plaintiff met with supervisor Myrick, and Myrick's superior, Rodger Brownrigg, with a different translator present. During that meeting, plaintiff showed Brownrigg a doctor's note excusing plaintiff from work for ten days for lumbar pain and inflammation of both of his thumbs. (Dk. 60, Myrick Exh. # 3). Plaintiff informed Brownrigg on the 31st that part of the reason he left work the night before was because of his back pain and thumb problems. (Dk. 71, Brownrigg depo. p. 116.)

Thereafter, Brownrigg conducted an investigation in which he spoke with Myrick and interpreter Nguyen regarding their recollection of the reasons given by plaintiff for leaving the job. The record does not reveal that plaintiff had any previous problems with insubordination, leaving work early, or excessive absences. Brownrigg concluded that plaintiff had walked off the job before his shift had

ended because he was tired, and had not told Myrick on the 30th that he was leaving because of any injuries or physical problems. Brownrigg made the decision to terminate plaintiff's employment, and did so on February 3, 1997. The reason given on the termination form is that plaintiff walked off the job before his eight hours were over. (Dk. 60, Myrick Exh. 7.) This suit followed.

## SUMMARY JUDGMENT STANDARD

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will … preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.,* 849 F.2d 1269, 1273 (10th Cir.1988).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Industries, Inc.,* 939 F.2d 887, 891 (10th Cir.1991)).

The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.,* 45 F.3d 357, 363 (10th Cir.1995).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas Drilling Partnership v. Federal Deposit Ins. Corp.,* 805 F.2d 342, 346 (10th Cir. 1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791(1987).

## ANALYSIS

### Ancestry Discrimination

■ A plaintiff alleging violations of Title VII must present either direct or indirect evidence sufficient to show intentional

discrimination. *See Shorter v. ICG Holdings, Inc.,* 188 F.3d 1204, 1207 (10th Cir. 1999).

■ Here, it appears that plaintiff is attempting to assert a disparate treatment claim. "Because disparate treatment is a form of intentional discrimination, the plaintiff must prove that [his] employer acted with a discriminatory intent or motive." *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1315 (10th Cir.1999).

■ Traditionally, to establish a prima facie case of ancestry discrimination in his termination from employment, plaintiff must demonstrate: (1) he was within a protected class or minority; (2) he was doing satisfactory work; (3) he was discharged; and (4) the job was not eliminated after his discharge. *Howard v. Beech Aircraft Corporation,* 57 F.3d 1080, 1995 WL 355252 at *2 (10th Cir.1995) (Table), *citing Murray v. City of Sapulpa,* 45 F.3d 1417, 1420 (10th Cir.1995); *Munoz v. St. Mary–Corwin Hosp.,* 221 F.3d 1160 (10th Cir.2000) (examining national origin claim).

Defendant seeks summary judgment on the grounds that the fourth element requires plaintiff to show that he was replaced by a non-class member (Dk.60, p. 12), and plaintiff has failed to make that showing. Defendant concedes in its reply brief that no such showing is required. (Dk.71, p. 13). Defendant's confusion is understandable. *See Amro v. The Boeing Company,* 232 F.3d 790, 796, n. 3. (10th Cir.2000) (noting "some confusion in our prior cases as to the requisite elements of the fourth step of the prima facie case"); *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1228 (10th Cir.2000) ("Some confusion regarding the fourth prong of the plaintiff's prima facie case in a discharge situation crept into our nomenclature in later cases where, occasionally, we would articulate the fourth prong of the prima facie case as requiring a plaintiff to show that the replacement employee was of nonprotected status.").

■ As the court stated above, the burden rests on plaintiff to show the court that plaintiff's position was not eliminated after his discharge. Neither party cites to any evidence regarding this element. This court declines to "search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1025 (10th Cir.1992); *see also SIL–FLO, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1513–14 (10th Cir.1990) (stating that not only will the court not sift through the record to find support for an argument, the court will not manufacture arguments for the party).

■ The court has reviewed the record for purposes of examining plaintiff's other claims, however, and has found no testimony or evidence whatsoever that would establish that plaintiff's position was not eliminated after his discharge, or that would relate whatsoever to the fourth element of plaintiff's prima facie case of disparate treatment. Accordingly, the court finds that plaintiff has failed to make a prima facie case of ancestry discrimination.

Nor does the evidence otherwise raise any inference of ancestry discrimination. In fact, plaintiff's briefing of his claim of ancestry discrimination is so scant that the court wonders whether the plaintiff intends to concede it. The sole allegations that arguably relate to plaintiff's ancestry are: that "Brownrigg knew that plaintiff was of Asian, presumably Vietnamese ancestry," (Dk.88, p. 10); that plaintiff had received two written reprimands from a supervisor other than Myrick over a year before his termination (Dk. 68, Bui depo. p. 17–18); that "other supervisors" made plaintiff, but not other employees, go the long way around to get to his work area

(Dk. 68, Bui depo. p. 17), that plaintiff believed Myrick hated Vietnamese on the line and worked them to death (Dk.60, p. 47), and that no Vietnamese were hired at the plant after 1997. (*Id.,* p. 49). These allegations, even if they were supported by evidence, are insufficient to raise an inference that Brownrigg intentionally discriminated against plaintiff in deciding to terminate plaintiff's employment. No other ancestry discrimination claim is made. (See Pretrial order, Dk. 88, p. 2.) Accordingly, summary judgment is warranted on plaintiff's claim of ancestry discrimination.

### Age Discrimination

█ Generally, to establish a prima facie case of age discrimination in termination from employment, plaintiff must prove he was (1) within the protected age group; (2) doing satisfactory work; (3) discharged despite the adequacy of his work; and (4) replaced by a younger person. *See Grabow v. Williams Natural Gas Co.,* 201 F.3d 447, 1999 WL 1063824, *2 (10th Cir.1999) (Table).

█ Neither party cites to any evidence regarding the fourth element of plaintiff's prima facie case. As noted, above, the court has reviewed the record, although it has no duty to do so. The record contains no testimony or evidence whatsoever that would establish that plaintiff was replaced by a younger person, or that would otherwise relate to the fourth element of plaintiff's prima facie case of age discrimination.

Nor does the evidence otherwise raise any inference of age discrimination. It is uncontested that plaintiff was 60 years of age at the time of his termination. The

sole support for this claim, if any, is plaintiff's testimony that supervisor Myrick knew plaintiff was "old" because plaintiff told everyone around him, including his supervisors, that he was old. (Dk. 68, Bui depo., p. 47). This evidence falls woefully short of making a prima facie case of age discrimination in Brownrigg's decision to terminate plaintiff's employment.[3] Summary judgment will therefore be granted on this claim.

### Jurisdiction over Retaliatory Discharge Claim

█ The pretrial order and the briefs filed by plaintiff on this summary judgment motion clearly reflect that plaintiff's primary claim is a claim of discharge in retaliation for plaintiff's intent to file a worker's compensation claim, or for having suffered a compensable injury. This is a state law claim over which this court has no independent jurisdiction, and for which the plaintiff has invoked only this court's supplemental jurisdiction. (Dk.88, p. 1).

It may be argued that the defendant is in fact diverse from the plaintiff, and that diversity jurisdiction could exist over plaintiff's remaining claim. However, diversity jurisdiction has not been pled in this case. The pretrial order recites only that the "jurisdiction of the court is invoked pursuant to 42 U.S.C. § 1331, 42 U.S.C. § 2000e *et seq.* and 29 U.S.C. § 621, *et seq.* Plaintiff invokes the court's supplemental jurisdiction as to the state law claims under 28 U.S.C. § 1367." (Dk.88, p. 1.) Nor does the pretrial order contain so much as a reference to the citizenship of the parties.

---

**3.** Perhaps in tacit recognition of this fact, plaintiff's brief in opposition to summary judgment does not contend that plaintiff has made a prima facie case of age or ancestry discrimination. Instead, it affirmatively describes the "nature of the matter before the court" as "a retaliatory discharge case" and omits any reference therein to his age or ancestry claims (Dk. 67, p. 1, Nature of the Case). Similarly, plaintiff's "factual contentions and legal theories," which fill over three pages of the pretrial order, contain no reference whatsoever to any age or ancestry claims. (Dk.88, p. 3–6).

█ The court is not at liberty to take judicial notice of the citizenship of the parties for purposes of establishing diversity jurisdiction. As the Tenth Circuit stated in examining this issue:

> While it may be surmised, or perhaps privately known, that the defendant corporation does not maintain its principal place of business in the State of Colorado, this is not such a matter as may be judicially noticed. If the court could take judicial notice of such matters there would be no necessity at all for alleging diversity of citizenship between corporate parties in Federal courts since as a general rule what may be judicially noticed need not be pleaded.

*Buell v. Sears, Roebuck and Co.*, 321 F.2d 468, 470–71 (10th Cir.1963); *See Penteco Corp. Ltd. Partnership–1985A v. Union Gas System, Inc.*, 929 F.2d 1519, 1522 n. 2 (10th Cir.1991).

█ Since federal courts are courts of limited jurisdiction, there is a presumption against their jurisdiction and the party invoking federal jurisdiction bears the burden of proof. *Penteco Corp. v. Union Gas System*, 929 F.2d 1519 (10th Cir.1991). Lack of jurisdiction cannot be waived and jurisdiction cannot be conferred on a federal court by consent, inaction or stipulation. *Basso v. Utah Power and Light Company*, 495 F.2d 906 (10th Cir.1974). Because of the way plaintiff chose to invoke the jurisdiction of this court, no diversity jurisdiction exists, nor can any be conferred by inaction of the parties.

█ Having granted summary judgment on all claims over which this court has original jurisdiction, the court declines to exercise supplemental jurisdiction on the plaintiff's state law claims against the defendant. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."). When the federal claims have dropped from the case, the seminal teaching of *Gibbs* is that the most common response is to dismiss the state law claims without prejudice. *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir.1997). The parties do not argue any unique circumstances, and the court finds none, that would justify exercising supplemental jurisdiction over plaintiff's state law claims against the defendant.

IT IS THEREFORE ORDERED THAT defendant's motion for summary judgment (Dk.59) is granted as to plaintiff's claims of age and ancestry discrimination and is denied as moot as to plaintiff's claim of retaliatory discharge.

IT IS FURTHER ORDERED that plaintiff's claim of retaliatory discharge is dismissed without prejudice.